EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISRAEL FIGUEROA GONZÁLEZ, acusado y apelante.

Número: CR-65-500     Resuelto: 28 de junio de 1967

*Elizabeth A. de Watlington, Edna Abruña Rodríguez, Enrique Miranda Merced, Antonio Andino Elías y Ramón Rivera Valentín,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* e *Ida Cardona Hernández, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

A los 16 años y 8 meses de edad el apelante privó de la vida a un ser humano, de cuatro disparos de revólver. Acusado de asesinato en primer grado fue convicto de asesinato en segundo grado, portación de armas (grave) y posesión de armas (menos grave). Fue sentenciado a prisión de 12 a 20 años y de 1 a 4 años, respectivamente, y a un año de cárcel. En apelación levanta los siguientes errores:

(1) Que hubo error al admitirse en evidencia la declaración extrajudicial del acusado;

(2) Que el proceso en contra del acusado no cumple con los requisitos del debido procedimiento de ley;

(3) Que el Tribunal actuó sin jurisdicción en el proceso por infracción al Art. 6 de la Ley de Armas;

(4) Que el Juez cometió error de derecho al increpar severamente en presencia del jurado al testigo de defensa, padre del apelante y al sentenciarlo por desacato; y

(5) Que se cometió error al denegarse una moción de nuevo juicio.

Sostiene el apelante que al momento de prestar declaración extrajudicial el Tribunal de Menores no había renunciado su jurisdicción sobre él y que no fue advertido que de

102

prestar declaración ésta podría utilizarse en su contra si el Tribunal luego renunciara la jurisdicción en su caso. Sostiene también que debe aplicársele la decisión de *Escobedo* v. *Illinois*, 378 U.S. 478, conforme a la interpretación de este Tribunal en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965).

■ La declaración fue hecha el 21 de octubre de 1962. El juicio se celebró los días 26 y 27 de junio de 1963. A esas fechas el apelante no tenía, bajo el estado de derecho vigente, la garantía constitucional de que su declaración extrajudicial se excluyera del proceso por razón de que al prestarla no estuviera asistido de abogado, ni se le advirtiera sobre su derecho a asistencia legal allí, ni se le designara uno. *Rivera Escuté* v. *Jefe Penitenciaría*, supra; *Pueblo* v. *Adorno Lorenzana*, 93 D.P.R. 788 (1966). Para las fechas en que se prestó la declaración y se celebró el juicio tampoco estaban en vigor las actuales Reglas 4, 22(b) y 23(a) y (b) de Procedimiento Criminal.

■ En cuanto al otro requisito de advertencia, nada hay en la Ley Núm. 97 de 23 de junio de 1955 para entender de asuntos de niños que exigiera que el apelante fuera advertido del hecho de que el Tribunal de Menores podría renunciar su jurisdicción, como requisito de la validez de la declaración extrajudicial a los efectos de su exclusión en juicio. En realidad, después de lo resuelto por el Tribunal Supremo de los Estados Unidos en el caso del menor *In re Gault*, 387 U.S. 1, resuelto en 15 de mayo de 1967, en lo que respecta a garantías constitucionales básicas, no debería haber diferencias entre el tratamiento como menor y como adulto.

■ Independientemente de la norma aplicable en relación con los casos de *Rivera Escuté* y *Adorno Lorenzana*, supra, surgidas de *Escobedo* v. *Illinois*, ya citado, al apelante le protegía en todo momento la garantía constitucional de no incriminarse a sí mismo, y como secuela de ello, el ser advertido de esa garantía.

La declaración jurada del apelante tomada por el Fiscal aparece en una forma oficial que dice: "Declaración Jurada de Testigo: —————————— En —————————, a —————— de ——————

(nombre)

—————————— de 19——, yo, —————————————————————————, vecino de —————————————, con residencia en ——————————————, de —————— años de edad, ante el Fiscal comparezco y, previas las advertencias de ley que me han sido hechas, espontáneamente bajo juramento declaro:" (el resto de la forma queda en blanco). Después de una exposición de los hechos redactada por el apelante en forma narrativa, sigue un interrogatorio de preguntas y respuestas que termina así:

"P. Por qué ayer tú estabas caminando con el revolver?

R. Desde hace dos días yo estaba caminando con el revolver.

P. Para qué hace dos días cargabas ese revolver?

R. Para la defensa, para defenderme de que nadie me limpiara el pico, o mejor dicho, nadie no, si que ellos mismos no me fueran a limpiar el pico.

P. Todo lo que has dicho es verdad?

R. Sí señor.

P. Tú lo declaras voluntariamente?

R. Sí señor.

P. Yo le(*) expliqué a ti que tenías el derecho a no declarar si no querías.

R. Sí señor.

P. Que si declarabas cualquier cosas(*) que dijeras podía utilizarla en tu contra en cualquier caso?

R. Sí señor.

P. Alguien te ha amenazado a ti para que declares?

R. No señor.

P. Luego, debo entender que todo lo que has declarado ha sido de tu espontanea voluntad?

R. Sí señor.

P. Sientes remordimientos por lo que hiciste?

R. No señor.

P. Hasta que grado estuviste en la escuela?

———————————

(*) Así aparece en el original.

R. Estuve en cuarto, quinto, sexto y séptimo, digo cogí examen para séptimo y los pasé."

El que en la forma utilizada para prestar la declaración aparezca impresa la frase "previas las advertencias de ley", no da debido cumplimiento al mandato constitucional de advertir contra la autoincriminación. No dice qué advertencias fueron las hechas, ni puede ser la base de una renuncia inteligente de ese derecho. Tampoco debe ser la mejor forma una expresión final, después de declarados los hechos, de que al detenido se le ha advertido su derecho en tal sentido. Aunque el apelante aceptó que así fue, no surge afirmativamente en qué momento el Fiscal pudo haber hecho la advertencia. Si se ha de dar cabal cumplimiento a la protección constitucional, tal advertencia debe preceder a toda declaración, y así debe aparecer específicamente del texto de la misma si fuere escrita.

Por otra parte, no deja de aparecer en la declaración, si bien no de la mejor manera que debió ser, que al apelante se le advirtió su derecho a no autoincriminarse, y que lo que declarara podría utilizarse en su contra en cualquier caso. Esto, unido al hecho que del estudio del récord estamos plenamente convencidos que ésa fue una declaración voluntariamente hecha sin coacción de índole alguna, a lo cual nos referiremos más adelante, la misma no era fatalmente inadmisible a la luz de dicha garantía constitucional.

Se alega que con la admisión de la declaración extrajudicial hubo una convicción sin el debido proceso de ley. En el segundo caso de *Rivera Escuté*, 80 D.P.R. 830 (1958), aun cuando sostuvimos que para esa época no existía el derecho constitucional a estar asistido de abogado en la investigación de un caso, no obstante dijimos, siguiendo la norma en *Crooker* v. *California*, 357 U.S. 433 y *Cicenia* v. *La Gay*, 357 U.S. 504, que la falta de abogado en esa etapa podía ser un factor a considerarse en conjunto con otras circunstancias si ello pudo imprimir al juicio posterior una carencia de aque-

lla imparcialidad esencial al concepto mismo de la justicia, de modo que la sentencia condenatoria fuera el fruto de una situación repulsiva a aquellos principios básicos de libertad y justicia que inspiran un juicio imparcial y justo. (Págs. 854–855.)

Atentos a esta norma hemos examinado el récord. Surge del mismo de manera indisputable en el incidente sobre voluntariedad de la declaración, que después del hecho ocurrido en la tarde del 20 de octubre de 1962 el apelante se escondió. El Fiscal se comunicó con el padre, pidiéndole cooperación para hallarlo. Al otro día el padre informó al Fiscal por teléfono que el apelante se hallaba en la casa de un tío. Acompañados de padre los agentes fueron al sitio, y el Fiscal se trasladó al Cuartel General a esperarlos allí. Traído el apelante, el Fiscal conversó con él unos quince minutos en presencia del padre, en la oficina de uno de los oficiales provista de aire acondicionado. Después pasaron a otra oficina, esta vez sin el padre, en donde inmediatamente se tomó la declaración escrita. El apelante no sufrió detención alguna antes de declarar en manos de las autoridades policíacas. En su propia declaración dice que se fue a Caguas y desde allá mandó razón a su padre que fuera a buscarlo para entregarse.

Lo ocurrido en este caso en torno a la declaración del apelante dista mucho de lo que le ocurrió al menor en *Haley* v. *Ohio*, 332 U.S. 596. Y los procedimientos para tratar al menor apelante como adulto, distan mucho en el caso de autos de los procedimientos usados y rechazados en *Kent* v. *United States*, 383 U.S. 541.

Además de lo dicho, la experiencia del arresto y de la interrogación fiscal no era nueva para el apelante. Desde los doce años venía cometiendo con frecuencia una serie de faltas que de haberlas realizado un adulto, eran delitos graves.

La admisión de la declaración extrajudicial en el proceso del apelante no fue al margen del debido proceso de ley, ni de

un juicio justo e imparcial. Así quedan dispuestos los errores primero, segundo y quinto, ya que la solicitud de nuevo juicio se basó en la admisión de la misma.

En apoyo del tercer error, sostiene el apelante que la Sala sentenciadora no tenía competencia para procesarlo y condenarlo por la violación de la Ley de Armas (menos grave). Somos de opinión que la tenía.

El Art. 4 de la Ley del Tribunal de Menores según fue originalmente aprobada en 1955 disponía que cuando se imputara a un niño mayor de 16 años de edad y menor de 18 la comisión u omisión de un acto que constituiría *delito grave* si en ella incurriera un adulto, el Juez quedaba facultado para renunciar su jurisdicción, de entender que de retenerla sería contrario al bienestar del niño o de la comunidad, y podría dar traslado del caso para que se tramitara como si se tratara de un adulto. Esta disposición regía el 12 de febrero de 1963, fecha en que el Tribunal de Menores renunció su autoridad o competencia en este caso. Este Art. 4 autoriza la renuncia de la competencia del Tribunal por razón del acto cometido sin que sea necesario que el menor haya estado previamente bajo su autoridad.

En la resolución de 12 de febrero de 1963 el Tribunal de Menores renunció la jurisdicción para entender específicamente en estos delitos y en uno adicional de acometimiento y agresión. Aparte de la misma, el Art. 3 de la Ley dispone que el Tribunal conservará su *autoridad* sobre todo niño sujeto a sus disposiciones hasta que cumpla la edad de 21 años "a menos que el Tribunal, mediante orden al efecto, renuncie a su poder sobre el menor después de haber cumplido 16 años y antes de que éste cumpla 21 años de edad . . . ."

El apelante se encontraba ya bajo la autoridad del Tribunal de Menores. Considerados ambos artículos y no habiendo el Tribunal reservado expresamente su jurisdicción en cuanto a los delitos menos graves comprendidos en su resolución, no puede decirse que el Tribunal Superior care-

ciera de competencia para juzgar al apelante por el delito menos grave de posesión de armas. Además, puede observarse que si bien es cierto que al apelante se le acusó por infracción al Art. 6 de la Ley de Armas—Ley Núm. 17 de 19 de enero de 1951—como delito menos grave, tomando dicho artículo conjuntamente con el Art. 17 del propio estatuto el apelante en realidad había cometido un delito grave porque había usado el arma que poseía sin licencia en la comisión de un asesinato. ([1])

Una vez que renunció su autoridad en cuanto a las acusaciones graves, dejando que el apelante fuera tratado como un adulto, bajo la filosofía que rige al Tribunal de Menores ningún fin se cumplía con seguir considerando al apelante como un niño a los fines de la acusación menos grave.

En lo que respecta al cuarto error, el incidente no debió haber ocurrido. El testigo, padre del apelante, declaraba en estado algo nervioso. Al principio de su testimonio el Magistrado le advirtió que no declarara sobre nada que ocurriera después del 20 de octubre, fecha de la muerte. El Juez explicó las razones que había, en presencia del jurado. Después de un prolongado interrogatorio bastante movido y repetidor, inclusive un interrogatorio del juez—los jueces tienen la facultad de preguntar razonable y prudentemente, pero al hacerlo no deben insinuar ante el jurado que lo hacen porque las partes están tratando de ocultarles hechos o la verdad—se le preguntó al testigo si conocía al padre de la

---

([1]) Hay además un historial legislativo que reafirma el criterio de que el Tribunal pudo renunciar su autoridad en la acusación menos grave. Véanse la Ley Núm. 103 de 29 de junio de 1955 autorizando al Tribunal Superior a conceder sentencias suspendidas a un menor de 21 años en todos los delitos graves excepto en el de asesinato en primer grado; la Ley Núm. 57 de 16 de junio de 1956 enmendatoria del Art. 2 de la Ley Núm. 259 de 1946 autorizando por primera vez al Tribunal Superior a suspender los efectos de la sentencia en delitos *menos graves* relacionados con los mismos hechos del delito grave; la Ley Núm. 58 de 19 de junio de 1959 enmendatoria del Art. 2 de la 259 de 1946 para conceder al Tribunal

víctima y su hermano y éste contestó que cómo no, si lo habían acribillado a balazos. No dijo cuándo. El Juez dio un malletazo y amonestó al testigo por desacatar al Tribunal y que luego dispondría de él.(²)

■ Aunque no nos parece que el testigo fuera el único culpable, el incidente no fue de tal gravedad al extremo que el proceso redundara en uno no justo e imparcial. La muerte se produjo a la luz del día, en sitio público y en presencia de varias personas. La prueba de cargo fue de testigos oculares que vieron al apelante dispararle a su víctima, cualesquiera que fueran las motivaciones, sin que hubiera lucha entre ellos. El cuarto error no da lugar tampoco a revocación.

*Por los fundamentos expuestos, se confirmarán las sentencias condenatorias.*

El Juez Presidente Señor Negrón Fernández no intervino.

El Juez Asociado Señor Blanco Lugo concurre con el resultado.

---

Superior jurisdicción o competencia original para entender en los casos *menos graves* que surjan de los mismos hechos o transacción del delito grave; y la Ley Núm. 94 de 26 de junio de 1964 que, al enmendar el Art. 4 de la Ley Núm. 97 de 1955, no limitó la renuncia del Tribunal de Menores al caso de un delito grave.

(²) En ausencia del jurado lo castigó por desacato.