El Pueblo de Puerto Rico, demandante y apelado, *v.* Ramón Álvarez Solares c/p Golingo, acusado y apelante.

*Número:* CR-66-85      *Resuelto:* 27 de febrero de 1968

*Francisco Coll Moya*, abogado del apelante; *J. B. Fernández Badillo, Procurador General*, y *Américo Serra, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Ésta es una convicción de homicidio involuntario. En la noche del 11 de septiembre de 1962 tres personas caminaban por el área de seguridad de la carretera de Carolina hacia la calle Loíza. Iban de uno en fondo. Al extremo derecho de la zona de seguridad había una zanja que contenía agua.

Las tres personas caminaban por su derecha hacia la calle Loíza, o sea de espaldas al tránsito en la misma dirección. El último de atrás de momento gritó: "Mira cómo viene ese carro." El que le precedía miró y ambos "volaron" al otro lado de la zanja. Una de estas personas, en su testimonio en corte dijo que el automóvil venía como a 80 millas. Dice ese testigo (R. pág. 118): "Sí, y cuando yo miré, que volamos, ahí fue que 'Golingo' le dio con el carro y lo tiró en la zanja y siguió por la zanja y cuando volvió a la carretera fue que se vio el cadáver." El interfecto cayó dentro de la zanja boca abajo. No hubo frenada alguna. El automóvil no se detuvo después del accidente. Al otro día del accidente volvió a ver el automóvil que arrolló al interfecto, el mismo carro, un Cadillac.

Otro testigo del Pueblo declaró que en el momento del accidente se encontraba como a 100 metros de distancia en una curva y vio venir un carro como a 50 ó 60 millas. El carro era un Cadillac. Al pasar frente al testigo hizo un zigzag y siguió a velocidad hasta que se perdió por la curva. Le pasó como a 3 pies de distancia al testigo por su lado. Como a los segundos, un señor decía que habían matado a uno. Corrió al sitio y vio a la víctima en la cuneta. Sabía que el automóvil era de "Golingo".(*) Esa misma noche el testigo fue con un agente a la casa del apelante y vio el Cadillac en la casa de éste. Este testigo no fue contrainterrogado.

El Pueblo ofreció la declaración de un agente que intervino en la investigación. Encontró el cadáver en una zanja boca abajo con la cabeza hacia la misma dirección en que la víctima caminaba. La carretera allí tenía un ancho de 18 pies cinco pulgadas, estaba en buenas condiciones y no había llovido. La zona de seguridad tenía 8 pies 1 pulgada. Encontró huellas de las ruedas del automóvil sobre la tierra

---

(*) Según la acusación, al apelante se le conocía por Golingo.

suelta en el área de seguridad o sea fuera del pavimento. Medían 66 pies, medidos desde el pie de la víctima hasta el sitio en que dichas huellas entraron en la referida área de seguridad. En el sitio había alumbrado y visibilidad. Este testigo no fue contrainterrogado.

El testimonio pericial médico dio como causa de la muerte, entre otras lesiones internas, un trauma que originó una transección de la médula espinal a la altura del segundo segmento cervical. Declaró el facultativo que practicó la autopsia que no fue necesario seccionar con el bisturí la médula porque ésta ya lo estaba de una manera traumática a colgajos.

En este recurso el apelante hace cuatro señalamientos de error: (1) La aceptación por el tribunal en evidencia de la declaración prestada por él durante la investigación del caso. (2) Error del tribunal al pasar al jurado esa declaración del acusado sin que hubiera prueba ante ellos de su voluntariedad y sin que se les instruyera debidamente. (3) Error al declarar el tribunal sin lugar la objeción de registro ilegal relacionada con la declaración del Fiscal Noriega. (4) Error al admitirse en evidencia el *Exhibit* 5 del Pueblo.

El primer error se refiere a la admisión de la confesión extrajudicial del acusado. El Fiscal Noriega quien tomó dicha declaración declaró ante el juez, sin estar el jurado presente, en cuanto a las circunstancias en que fue obtenida. La defensa aceptó la completa voluntariedad de dicha confesión, sin coacción de índole alguna. Sostiene, sin embargo, que era inadmisible por ausencia de ciertas advertencias relativas a asistencia de abogado y al derecho de no incriminarse. El fiscal acepta que no se hicieron advertencias en cuanto a la asistencia legal.

■ La declaración fue prestada el 12 de septiembre de 1962. Para esta fecha no estaban en vigor las actuales Reglas de Procedimiento Criminal, particularmente las Reglas 4 y 22. Para la fecha en que se celebró el juicio, los días 10 y 11 de agosto de 1965, no se había resuelto *Rivera Escuté* v.

*Jefe Penitenciaría*, 92 D.P.R. 765, decidido el 26 de octubre de 1965. A la luz del estado de derecho aplicable a la fecha en que se tomó la declaración y a la fecha en que se celebró el juicio, la misma no era inadmisible por los fundamentos de *Rivera Escuté*, supra.

■ En cuanto a la advertencia relativa al derecho de no incriminarse, la declaración adolece del mismo defecto que consideramos en el caso de *Pueblo* v. *Figueroa González*, 95 D.P.R. 98 (1967), en donde en una forma impresa el deponente declara "Previas las advertencias de ley que me han sido hechas", sin que se diga cuáles son. Luego al final de la declaración aparece advertido el derecho a no incriminarse y a que lo dicho puede ser usado en su contra. Como en ese caso, repetimos que estas advertencias deben preceder, de manera específica, a toda declaración.

■ Considerando, no obstante, todas las circunstancias en que la declaración fue prestada en este caso, la ausencia total de toda coacción para obligar a declarar, la entera voluntariedad de la misma y el hecho de que aparece alguna advertencia hecha antes de firmarse, el defecto no da margen para una revocación en este caso.

En su declaración extrajudicial el apelante aceptó haber arrollado al interfecto con su Cadillac, si bien dijo que éste trató de cruzar y que corría a 35 millas. No frenó. Tampoco se detuvo por temor a que le dieran. Fue a su casa, dejó allí el carro y se fue en otro vehículo a ver un abogado. No fue de inmediato al cuartel porque deseaba que lo acompañara otra persona. A las 2:30 A.M. se personó en el cuartel a entregarse. Allí prestó su declaración ante el fiscal.

■ El segundo error no fue cometido. Admitida en evidencia la declaración por el tribunal de derecho después de oir prueba sobre su voluntariedad, no era necesario, como sostiene el apelante, que volviera a repetirse ante el jurado la prueba del fiscal sobre ese aspecto. Ésa era la norma ante-

rior que ya no prevalece después que adoptamos la de *Jackson* v. *Denno*, 378 U.S. 368. La Sala sentenciadora instruyó debidamente al jurado que dicha declaración debía ser pesada y apreciada en conjunto con el resto de la prueba en el proceso de llegar a un veredicto.

■ El cuarto error tampoco fue cometido. El *Exhibit* 5 del Pueblo es una de varias fotografías que le fueron tomadas a la víctima mientras yacía en la zanja. En ella el interfecto está cubierto con una manta y solo se ve parte de sus piernas y los pies. Nada hay de grotesco en ella, a distinción de las demás que se aceptan, que pudiera exacerbar indebidamente al jurado. Se observan tres pequeñas velas prendidas junto al cadáver. Al jurado le es familiar esta expresión piadosa de nuestra gente de pueblo cuando ocurren muertes violentas en la vía pública.

El tercer error se refiere a una prueba testifical que el apelante relaciona a un registro ilegal. El fiscal se personó en el sitio de los hechos y en el curso de la investigación fue con un agente a la residencia del apelante.(¹) La casa, de madera, tenía verja al frente y un portón cerrado sin candado. La verja se describió como de la altura de la baranda frente al jurado. El fiscal llegó hasta la puerta de entrada, tocó, y nadie respondía. Tocó por las ventanas del costado y tampoco nadie respondía. A un lado de la casa, en la parte del frente, estaban un camión y el Cadillac en una especie de garage en descubierto sin paredes ni puertas. Al entrar por el portón al patio los vehículos eran visibles y lo eran desde la calle si una persona se hubiera dispuesto a mirarlos. El fiscal examinó el Cadillac. El bonete tenía una abolladura y estaba caliente y mojado. Las ruedas estaban también mojadas. Ordenó que el vehículo fuera llevado al

_____

(¹)El testigo que estaba a 100 metros de distancia y vio pasar al apelante en su Cadillac segundos antes y corrió al sitio, declaró que esa misma noche fue con un guardia a la casa del acusado y vio allí el Cadillac.

cuartel y que le tomaran fotografías. Esos hallazgos fueron declarados por el fiscal con la objeción de la defensa.

■ La protección constitucional contra registros y allanamientos irrazonables—Constitución del Estado Libre Asociado, Art. II, Sec. 10—se extiende igualmente al solar y predio que junto a la casa constituye la unidad de vivienda, así como a las edificaciones accesorias a ésta. Ésa es la doctrina que rige.

■ En las circunstancias de este caso, no estamos en condiciones de resolver que hubo un allanamiento irrazonable de la residencia del apelante por el solo hecho de pasar el fiscal por el portón sin candado para tocar en la puerta de entrada o por un costado. En las residencias urbanas ésa es la manera usual de procurar a una persona o de llamar a su puerta. El apelante no se detuvo al causar la muerte y era una gestión válida del fiscal tratar de localizarlo donde creía que podía encontrarse según la información obtenida durante su investigación en el sitio de los hechos.

El récord no demuestra que la presencia del vehículo en el cuartel fuera el factor decisivo que impulsara al apelante a hacer una confesión que de otro modo no hubiera hecho. Siendo así, no es necesario resolver, para decidir este caso, si el fiscal actuó o no en ley al ordenar que el vehículo fuera trasladado de la residencia.

■ Aun en el supuesto de que las observaciones del Fiscal Noriega relativas a las condiciones exteriores del Cadillac se consideraren inadmisibles por razón de un allanamiento irrazonable, ellas constituían sólo evidencia de unos elementos corroborativos, importantes tal vez en una situación de prueba únicamente circunstancial, pero no decisivos en la determinación de la culpabilidad del apelante ante un récord en que el jurado tuvo prueba directa, independientemente de dichas observaciones, de la ocurrencia del accidente, así como del vehículo y la persona que lo causó. En su declaración el

fiscal no dijo al jurado que aquella residencia donde estaba el vehículo era la del acusado.

La Sala sentenciadora impuso al apelante la pena de dos años de cárcel y la suspensión de la licencia de conductor por el término de dos años a partir de la fecha en que deje cumplida la sentencia de cárcel. Conforme a *Pueblo* v. *Pérez Escobar*, 91 D.P.R. 10 (1964), y habiéndose apelado la sentencia condenatoria que se dictó en este caso el 1ro. de octubre de 1965, *se modificará la misma para disponer que la suspensión de la licencia comience a contar desde que la sentencia sea ejecutoria y empiece a cumplirse, y así modificada, se confirmará.**

---

* NOTA DEL COMPILADOR: Mediante la Resolución de fecha 5 de abril de 1968, el Tribunal dispuso:

"Se enmiendan nuestra opinión y sentencia de 27 de febrero de 1968 eliminando la modificación dispuesta de la sentencia dictada por la Sala de San Juan del Tribunal Superior en 1ro. de octubre de 1965. Se confirma, *nunc pro tunc*, dicha sentencia apelada, sin modificación alguna.

Lo acordó el Tribunal y firma el Señor Juez Presidente."