EL PUEBLO DE PUERTO RICO, apelado, *v.* JUAN LÓPEZ LÓPEZ, apelante.

*Número:* CR-88-52     *Resuelto:* 28 de junio de 1991

*Raúl Rivera Rivera,* abogado del apelante; *Norma Cotti Cruz, Subprocuradora General,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogadas de El Pueblo.

## SENTENCIA

El apelante Juan López López fue acusado y convicto por el delito de recibo de bienes apropiados ilegalmente. Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274. Inconforme, apela ante este Tribunal y señala que erró el tribu-

nal de instancia al declarar sin lugar una moción de supresión de evidencia que presentó el día del juicio. El apelante argumenta que la prueba de cargo era inadmisible ya que había sido obtenida como resultado de un registro y allanamiento sin tener una orden judicial.

Resolvemos que el error señalado no fue cometido y confirmamos la sentencia apelada.

## I

La prueba de cargo consistió del testimonio del perjudicado y de uno de los agentes que intervinieron. De acuerdo con la exposición narrativa de la prueba, al Sr. Francisco Peralta Pérez le hurtaron su vehículo, Mitsubishi Mirage Technica de 1986, de las inmediaciones de la Parada 25 en Santurce el 17 de junio de 1987 en horas de la madrugada.

Poco tiempo después, el agente Juan Díaz Rosario, quien trabajaba en la División de Vehículos Hurtados de la Policía, arrestó al apelante en el sector Río Plantation de Bayamón. Según su testimonio, para esa fecha se encontraba en compañía del sargento Milton Colón en un vehículo oficial no rotulado por el mencionado sector en busca de una dirección. La gestión que realizaban no estaba relacionada con el hurto del vehículo del señor Peralta.

Mientras discurrían por la Calle Principal de Río Plantation, el agente Díaz Rosario observó a dos (2) individuos al lado de una residencia "bregando" con un Mitsubishi blanco que tenía el bonete levantado. E.N.P., pág. 2. El agente identificó al apelante López López como la persona que se encontraba en el lado derecho del vehículo trabajando con el motor. El otro resultó ser Antonio Birriel Arriaga. Cuando los hombres notaron la presencia del auto oficial, López López tiró la llave que tenía en la mano, lo que le pareció sospechoso al agente Díaz Rosario. Entonces, éste le dijo al Sargento Colón: "vira atrás que aquellos individuos están bregando con aquél auto." E.N.P., pág. 2.

El sargento viró en la Calle 5 y, al dirigirse de nuevo al lugar, ambos individuos salieron corriendo. E.N.P., pág. 2. López López corrió hacia la vía pública y se quedó en la esquina de la Calle Principal y la Calle 5 junto a un "grupito" de personas. Birriel Arriaga se metió en una residencia en la Calle 5. E.N.P., pág. 3.

Como consecuencia de las sospechas que levantó la conducta de Birriel Arriaga y López López, los agentes se dirigieron a un rudimentario "taller de mecánica" sin techos ni paredes donde se encontraba el auto. El solar no estaba cercado y tenía libre acceso a la vía pública. Una vez se acercaron al vehículo, se percataron de que a pesar de ser un modelo reciente "tenía gomas viejas, estaba desmantelado por dentro, no tenía asientos, ni consola, le habían extraído el radio, las cerraduras estaban forzadas" y no tenía puertas. E.N.P., pág. 3. Al lado del Mitsubishi había una camioneta donde se encontraban las piezas que le faltaban al auto.

Como el Mitsubishi todavía tenía la tablilla en su lugar, el agente Díaz Rosario pidió por radio a la comandancia de Bayamón las referencias del número de licencia. Luego de que se confirmó que el vehículo había sido hurtado ese mismo día por la madrugada en Santurce, se procedió al arresto de ambas personas. Birriel Arriaga le admitió al agente Díaz Rosario que él había hurtado el vehículo y que se lo llevó a López López para que se lo desmantelara por trescientos dólares ($300).[1]

La defensa no aportó prueba alguna, pero solicitó luego del desfile de la prueba de cargo que se suprimiera la evidencia incriminatoria por haber sido ocupada ilegalmente y ser el fruto de un allanamiento irrazonable. El tribunal

---

[1] Esta parte del testimonio es claramente inadmisible por ser prueba de referencia, pero no fue objetada por la defensa en el tribunal de instancia ni ahora en apelación. Esto no derrota la confirmación de la sentencia apelada, ya que aun si consideramos *sua sponte* este error como extraordinario (*plain error*), Regla 6 de Evidencia, 32 L.P.R.A. Ap. IV, el resto de la prueba presentada sostiene la convicción.

de instancia denegó la solicitud y encontró culpable[2] al acusado del delito imputado. Más tarde fue sentenciado a cumplir una pena de tres (3) años de presidio. De dicha sentencia apela ante este Tribunal.

De la exposición narrativa de la prueba se desprende que el arresto del apelante se realizó luego de que la Policía tuvo certeza de la comisión de un delito y motivos fundados para creer que el apelante lo había cometido. La controversia se reduce *únicamente* a determinar si la Policía efectuó un allanamiento ilegal al acercarse al lugar donde se encontraba el vehículo hurtado sin tener una orden judicial.

## II

Del testimonio del agente se desprende que el automóvil hurtado se encontraba en el *curtilage* de la residencia de López López. El *curtilage* es la zona compuesta por el terreno y estructuras accesorias que junto a la casa constituyen una unidad de vivienda. A pesar de que esta zona también goza de protección constitucional contra registros y allanamientos, la mera incursión de los agentes del orden público dentro de esta zona no constituye por sí solo un registro o allanamiento irrazonable. *Pueblo v. Torres Resto*, 102 D.P.R. 532, 534 (1974); *Pueblo v. Álvarez Solares*, 95 D.P.R. 789, 795 (1968).

Recientemente, en *Pueblo v. Rivera Colón*, 128 D.P.R. 672, 685 (1991), resolvimos que "[e]l análisis judicial para determinar si la entrada de los agentes constituye un registro irrazonable dependerá de si la persona tiene una expectativa razonable de intimidad en esa zona". En este caso, identificamos una serie de factores que los tribunales debían tomar en cuenta para determinar qué constituye

---

[2] Previamente el acusado había renunciado a su derecho a juicio por jurado.

una expectativa razonable de intimidad. Estos factores son:

1. El lugar registrado o allanado.
2. La naturaleza y grado de intrusión de la intervención policíaca.
3. El objetivo o propósito de la intervención.
4. Si la conducta de la persona era indicativa de una expectativa subjetiva de intimidad.
5. La existencia de barreras físicas que restrinjan la entrada o la visibilidad al lugar registrado.
6. La cantidad de personas que tienen acceso legítimo al lugar registrado.
7. Las inhibiciones sociales relacionadas con el lugar registrado. *Pueblo v. Rivera Colón*, supra, págs. 684–685.

Reconocimos, sin embargo, que ninguno de estos factores es determinante y todos deben examinarse en conjunto.

Aplicando estos criterios al caso de autos, es evidente que los agentes del orden público no llevaron a cabo un registro o allanamiento irrazonable. Mientras transitaban por la calle principal de una urbanización, éstos observaron que el apelante estaba "bregando" con un automóvil en un lugar claramente visible y con libre acceso a la vía pública. Los agentes notaron que cuando los individuos se percataron de su presencia, el apelante tiró la llave con la que estaba trabajando. Como encontraron que esa actividad requería una investigación adicional, los agentes decidieron pasar nuevamente por la calle. Al verlos retornar, el apelante y el otro individuo salieron corriendo en distintas direcciones.

Como resultado de las sospechas que levantó esta conducta del apelante y de Birriel Arriaga, los agentes decidieron investigar y se acercaron a ese lugar, que era visible desde la carretera y al cual tenían libre acceso. *El grado de intrusión de esa actuación fue mínimo*. Esa hubiese sido la manera normal de acercarse para hablar con cualquier persona que se encontrase en ese lugar tan expuesto. El propósito de la intervención policíaca no fue efectuar un

registro, sino investigar una actuación que *razonablemente encontraron sospechosa*. Una vez dentro de esa área, se limitaron primeramente a anotar la tablilla del automóvil desmantelado y a comunicarse con los cuarteles para identificar al dueño del vehículo.

El apelante no puede alegar que tenía una expectativa razonable de intimidad en ese lugar. Éste no tenía ninguna barrera física que impidiera el acceso o la visibilidad de personas que pasaran por la calle. Esta situación, unida al hecho de que un sinnúmero de personas, tales como vendedores o visitantes, tenía acceso legítimo a ese lugar, tiene el efecto de disminuir las barreras que impiden que cualquier observador o transeúnte entrara allí. En consecuencia, no resulta objetable que la Policía pueda acercarse a un lugar accesible a cualquier persona para averiguar la identidad del dueño de un vehículo que está siendo desmantelado en un lugar totalmente visible desde la vía pública.

Luego de comprobar mediante comunicación radiotelefónica que el automóvil había sido hurtado, y teniendo motivos fundados para creer que el apelante se había apropiado ilegalmente de él o que lo había recibido o transportado, procedieron a arrestarlo. En estas circunstancias, resolvemos que la Policía no llevó a cabo un registro o allanamiento irrazonable al acercarse al automóvil. Dados los hechos particulares de este caso, la actuación de la Policía fue razonable. En esta situación factual, exigirle a los agentes del orden público la obtención de una orden de allanamiento antes de investigar brevemente una conducta sospechosa que ocurre frente a ellos en una zona aledaña a su propiedad abierta al público, y que no tiene signos evidentes que reflejen una expectativa razonable de intimidad, constituiría una restricción irrazonable del patrullaje preventivo que se lleva a cabo en todos los sectores del País. Véase *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985).

Por los fundamentos expuestos, *se confirma la sentencia dictada por el Tribunal Superior, Sala de San Juan.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino. El Juez Asociado Señor Negrón García emitió una opinión concurrente. El Juez Asociado Señor Rebollo López disintió sin opinión escrita. La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente y de conformidad. El Juez Asociado Señor Alonso Alonso concurrió sin opinión escrita.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*


— O —


Opinión concurrente del Juez Asociado Señor Negrón García.

Los hechos de la presente apelación no permiten otro curso decisorio que reconocer la legalidad de la intervención policíaca habida y confirmar la sentencia condenatoria del tribunal de instancia. La imprescindible labor preventiva e investigativa que realizan los oficiales del orden público no puede verse anquilosada por supuestos reclamos de intimidad en áreas sujetas al escrutinio del público en general, aun cuando éstas formen parte de los predios circundantes de una residencia privada.

Expongamos sucintamente los hechos.


I


El 17 de junio de 1987 el agente Juan Díaz Rosario, de la División de Vehículos Hurtados de la Policía, y el Sgto. Milton Colón transitaban en una patrulla no rotulada por

el sector Río Plantation de Bayamón.(¹) Al pasar por la Calle Principal, observaron a dos (2) individuos que trabajaban en un vehículo Mitsubishi color blanco. Éste se encontraba en el patio lateral de una residencia, sita en la Calle 2 de dicho sector. Uno de ellos, quien resultó ser el apelante Juan López López, laboraba en el compartimiento del motor.

De repente, López López, al percatarse de la presencia del vehículo policíaco, dejó caer al piso la herramienta que utilizaba. Ello le estuvo sospechoso al agente Díaz Rosario, por lo que el sargento Colón, quien conducía, dio vuelta al auto patrulla y se dirigió nuevamente hacia la residencia donde se encontraban estos dos (2) individuos. Al notar éstos la presencia del vehículo policíaco, López López *comenzó a correr hacia la calle*, con la intención de confundirse con un grupo de personas que se encontraba en la esquina de la Calle Principal con la Calle 5. El otro individuo, por su parte, *entró a una residencia de la Calle 5*. Acto seguido, los agentes policíacos se detuvieron, desmontaron y procedieron a acercarse al lugar en que estaba el vehículo Mitsubishi, esto es, penetraron los predios de la residencia. El vehículo y lugar estaban al acceso y vista irrestricto e inmediato de cualquier persona que transitara por la calle. El lugar se utilizaba como taller de mecánica.

La *inspección ocular* del vehículo Mitsubishi y del área inmediata reveló que éste había sido despojado de su consola de instrumentos, asientos y radio, y que sus cerraduras habían sido forzadas. También, a pesar de ser un modelo reciente, sus neumáticos eran "viejos". Además, los agentes observaron que la caja de una camioneta que había junto al vehículo desmantelado contenía las piezas removidas de este último. Ante estas circunstancias, solicitaron por radio una relación del número de la tablilla del

---

(¹) Ambos se encontraban en funciones ajenas a la investigación de los hechos que propiciaron su intervención.

vehículo, lo que les confirmó que había sido reportado hurtado en la madrugada de ese día. Ello movió a los agentes a arrestar a López López y al otro individuo que le acompañaba momentos antes, de nombre Antonio Birriel Arriaga. Una vez bajo arresto y advertido de sus derechos, Birriel Arriaga admitió al agente Díaz Rosario haber hurtado el vehículo y habérselo llevado a López López para que lo desmantelara.

Así las cosas, el 8 de septiembre de 1987 se presentó una acusación contra López López en el Tribunal Superior, Sala de San Juan, por el delito de recibo de bienes ilegalmente apropiados. Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274. Desfilada la prueba de cargo ante tribunal de derecho, la defensa solicitó la supresión de la evidencia incriminatoria presentada por el Ministerio Fiscal. Sostuvo, en esencia, que ésta fue el fruto de un registro irrazonable. Declarada sin lugar esta solicitud y sometido el caso, el tribunal de instancia lo declaró culpable por el delito imputado y lo condenó a cumplir tres (3) años de presidio.

Inconforme, López López apeló. Como único señalamiento, cuestiona la legalidad de la incursión de los agentes en el área circundante a la residencia donde se encontraba el vehículo sin orden judicial. Por las razones más adelante expuestas, concurrimos con la Sentencia del Tribunal.

## II

Como señaláramos en nuestro disenso en *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988), la tarea de examinar la legalidad de un registro o allanamiento sin orden judicial exige el análisis de tres (3) importantes aspectos circunstanciales, a saber: (1) el lugar *objeto del registro;* (2) la presencia del concepto de *motivo fundado* para realizarlo, y (3) su *razonabilidad.*

Aunque nuestra Constitución ofrece protección contra los registros y allanamientos irrazonables por parte del Estado, no podemos pasar por alto que tal principio rector no es absoluto ni irrestricto. Así, en el pasado hemos convalidado la entrada de un fiscal al patio delantero de una residencia a través de un portón sin candado para tocar en la puerta, *Pueblo v. Álvarez Solares*, 95 D.P.R. 789 (1968), y bajo similares fundamentos, hemos estimado razonable la penetración de un agente policíaco en los linderos de una propiedad para conversar con sus ocupantes, *Pueblo v. Torres Resto*, 102 D.P.R. 532 (1974).

Esta normativa establece que el área circundante a, y que forma parte de, una residencia o estructura —que de lo contrario estaría protegida por el principio constitucional antes expuesto— puede ser válidamente allanado por un agente o funcionario gubernamental si éste penetra allí en funciones investigativas y las circunstancias son tales que invitaban o requerían allí su presencia. Ciertamente quien mantiene en su propiedad unos espacios abiertos al escrutinio físico o visual de un transeúnte o visitante casual, no puede reclamar *expectativa razonable de intimidad*. Véase nuestro disenso en *Pueblo v. Rivera Colón*, 128 D.P.R. 672 (1991). Ante esas situaciones, puede válidamente el oficial policíaco entrar a esos espacios que, como regla general, se encuentran accesibles a cualquier otro visitante u observador, sin tener que se le requiera una orden de allanamiento previa de un tribunal. *Pueblo v. Rivera Colón, supra*, opinión disidente. "[E]n la persecución del crimen no podemos imponerle al Estado y a la Policía del país, normas no contempladas en la Constitución, amén de su cuestionable valor práctico." *Pueblo v. Malavé González*, supra.

Para que proceda válidamente esta intervención, es menester que el agente o funcionario gubernamental tenga una razón justificativa. Su actuación no puede fundarse en meras conjeturas. El estado mental a analizarse será el de la realidad emergente del marco fáctico disponible al

agente en los instantes *anteriores* y *coetáneos* a la intervención, y no el de un ambiente de laboratorio judicial ascéptico. La totalidad de las circunstancias concurrentes dictarán la legitimidad de su actuación.

Una vez el agente tiene los criterios circunstanciales que requieran la intervención, su conducta tiene que ser graduada y razonable; debe estar a tono con la situación. En ocasiones, requerirá la inmediata ocupación de la evidencia y el arresto de individuos, mientras que en otras —cuando no exista peligro de desaparición o alteración de prueba, o fuga de sospechosos— el agente deberá limitarse a recopilar información y someterla luego a la autoridad competente.

Apliquemos este análisis tripartita a la situación de autos.

## III

El lugar donde se encontraba tanto el vehículo Mitsubishi hurtado como la camioneta que contenía las piezas sustraídas formaban parte del patio lateral de una residencia. Éste era utilizado como taller de mecánica, y para entrar desde la vía pública no había barrera física alguna. Tampoco existían estructuras que interrumpieran la visibilidad del lugar. Para todos los efectos, la intención de su operador —el apelante López López— era que el público en general tuviese libre acceso al taller. Ante estas circunstancias, poca, si alguna, expectativa de intimidad podía esperar.

La conducta de López López y Birriel Arriaga de soltar las herramientas que manejaban y echarse a correr, dispersándose por el área, alertaron la atención de los agentes policíacos. *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988), opinión disidente. Éstos, en el legítimo descargo de sus labores investigativas, procedieron a acercarse al taller de mecánica. Originalmente, limitaron su intervención a

inspeccionar *visualmente* el lugar donde se encontraba el vehículo Mitsubishi, percatándose de la condición en que se encontraba este automóvil de reciente fabricación y de que las piezas sustraídas estaban depositadas en la camioneta contigua. Sólo entonces, y con el conocimiento de que este vehículo había sido reportado hurtado, procedieron al arresto de López López y su compañero. No cabe duda que ante estas circunstancias, las actuaciones de los agentes fueron válidas. Resultaría irrazonable requerirles detener su labor investigativa legítima en el momento en que se encuentran, precisamente, recopilando información sobre una actividad que les pareció sospechosa. *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985).

El objeto del registro —área contigua a una residencia utilizada como taller de mecánica y abierta al público— el elemento de motivo fundado —movimientos sospechosos de López López y de Birriel Arriaga, al igual que las condiciones peculiares y notables del vehículo Mitsubishi— y la razonabilidad de la intervención —inspección ocular— requieren nuestra aprobación del alegado registro y consecuente confirmación de la sentencia apelada.

Por los fundamentos expuestos, concurrimos con el resultado.

— O —

Opinión concurrente y de conformidad emitida por la Juez Asociada Señora Naveira de Rodón.

Los hechos del presente caso son relativamente sencillos. El apelante Juan López López fue acusado de infringir las disposiciones del Art. 168 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4274 (recibir bienes apropiados ilegalmente). Luego de ser juzgado por tribunal de derecho, fue declarado culpable del delito imputado y sentenciado a cumplir tres (3) años de reclusión.

El día del juicio, Fiscalía presentó como testigo de cargo al Sr. Francisco Peralta Pérez, quien declaró que el 17 de junio de 1987 le fue hurtado el vehículo de su propiedad marca Mitsubishi, modelo Mirage Technica. Relató que lo dejó estacionado y cerrado, y cuando regresó al lugar donde lo estacionó no lo encontró. Inmediatamente dio aviso a la Policía, informándoles sobre la desaparición de su auto. En el contrainterrogatorio de la defensa manifestó que no sabía quién se llevó el automóvil.

El segundo testigo del Ministerio Público lo fue el agente Juan Díaz Rosario, quien está asignado a la División de Vehículos Hurtados de la Policía de Puerto Rico. Declaró que ese mismo día 17 de junio transitaba por las inmediaciones de la Urbanización Río Plantation en Bayamón en un auto oficial no rotulado. Lo acompañaba el sargento Milton Colón y andaban en busca de cierta dirección, gestión que no tenía nada que ver con los hechos del caso de autos, los cuales desconocían en ese momento. Testificó, además, que al pasar por la Calle Principal de la mencionada urbanización observó que al lado de una residencia en la Calle Dos (2) había dos (2) personas "bregando" con un automóvil marca Mitsubishi color blanco. El auto tenía el bonete levantado y, al lado derecho del mismo, se encontraba una persona "como bregando en el motor". Esta persona resultó ser el acusado apelante López López. Junto a él se encontraba otra persona que posteriormente resultó ser el Sr. Antonio Birriel Arriaga. Continuó declarando el agente Díaz que cuando el acusado y su acompañante notaron la presencia del vehículo oficial, el acusado López López arrojó una herramienta que tenía en su mano. Como este acto le pareció "sospechoso", el testigo le dijo al sargento: "vira atrás que aquellos están bregando con aquel auto". E.N.P., pág. 2. Señaló el agente Díaz que luego que el sargento viró en la Calle Cinco (5) y regresaron a la Calle Dos (2), cuando el acusado se percató de ello "se he-

chó [sic] a correr hacia la calle Principal".[1] C.N.P., pág. 2. Indicó que el otro individuo, Birriel Arriaga, también echó a correr y entró a una residencia ubicada en la Calle Cinco (5).

Junto al sargento, el testigo se dirigió hacia el vehículo Mitsubishi y al acercarse notó que éste tenía "gomas viejas" y estaba desmantelado por dentro.[2] Indicó que cerca del Mitsubishi había una camioneta y "todas" las piezas que le faltaban al auto desmantelado estaban dentro de ésta. El agente Díaz revisó el vehículo y al llegar a la parte trasera observó que éste tenía la tablilla en su lugar. Solicitó por radioteléfono información sobre el vehículo para lo cual utilizó el número de la tablilla. Desde la Comandancia de Bayamón le indicaron que ese vehículo fue reportado como hurtado. Hasta ese momento el testigo desconocía el alegado hurto de ese auto.

Mientras el agente Díaz solicitaba información, el sargento Colón permaneció vigilando los movimientos del apelante López López. El agente Díaz le indicó al sargento que le informaron que el vehículo era hurtado, y procedió a arrestar al señor Birriel Arriaga. Una vez arrestado, y luego de hacerle las advertencias de rigor, Birriel admitió que fue él quien hurtó el vehículo y le dijo al testigo que el acusado apelante no tenía nada que ver con el hurto. López López fue arrestado y advertido de sus derechos. La Policía se incautó del vehículo Mitsubishi y de la camioneta.

Posteriormente, entrevistaron a los arrestados y Birriel admitió nuevamente que fue él quien hurtó el vehículo. Señaló, además, que debido a que el apelante López López es dueño de un taller de mecánica, le llevó el auto a éste

---

[1] En el contrainterrogatorio declaró que al regresar a la Calle Dos (2) notó que el acusado ya no estaba junto al auto Mitsubishi, pero lo vio en la esquina de la Calle Cinco (5) y la Calle Principal parado junto a otras personas. Testificó, además, que el acusado "no se fue de allí corriendo". E.N.P., pág. 4.

[2] No tenía asientos ni consola y le habían extraído el radio. Notó, además, que las cerraduras habían sido forzadas.

para que lo desmantelara. Le ofreció trescientos dólares ($300) por efectuar este trabajo.(3)

El agente Díaz declaró que el taller de mecánica de López López no está techado ni tiene paredes. "Está al aire libre". E.N.P., pág. 3. Dicho taller está ubicado justo en las inmediaciones de la residencia del apelante López López.

En el contrainterrogatorio el agente Díaz declaró, a preguntas de la defensa, que cuando pasó frente a la casa del acusado, donde éste tiene su taller, vio el vehículo Mitsubishi de frente y con el bonete levantado; que no se percató de que al auto le faltaban piezas, sino hasta que se acercó a éste luego de regresar debido al acto "sospechoso" de López López, y que una vez entró al lugar donde se encontraba el vehículo fue que notó "que no tenía nada por dentro", pues "las piezas no se veian [sic] desde la carretera". E.N.P., pág. 4. Dijo también que, debido a su experiencia como agente de la División de Vehículos Hurtados de la Policía, pensó que éste era un vehículo hurtado. Luego que entró a la propiedad y llamó para solicitar información —a través del número de tablilla— fue que se enteró que el vehículo fue reportado como hurtado.

Terminado el contrainterrogatorio el fiscal dio por sometido su caso. La defensa planteó que en este caso procedía suprimir la evidencia presentada contra el acusado debido a que ésta fue ocupada ilegalmente. Declarada no ha lugar dicha moción de supresión, el caso fue sometido a la consideración del tribunal. El acusado fue declarado culpable y se dictó la correspondiente sentencia en su contra. Inconforme, acudió ante nos mediante escrito de apelación en el que planteó, en síntesis, que erró el tribunal de instancia al declarar no ha lugar la moción de supresión cuando del testimonio del propio agente Díaz se desprendía claramente que la evidencia había sido obtenida ilegalmente.

---

(3) Coincidimos con la apreciación de la opinión mayoritaria en cuanto a que esta parte del testimonio ofrecido por el agente Díaz es inadmisible por tratarse de prueba de referencia.

En su alegato de apelación, plantea que hubo un registro y allanamiento sin orden y un arresto ilegal, por lo que la evidencia ocupada debió suprimirse de acuerdo con lo dispuesto en el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1.

## II

En su comparecencia ante nos, el Procurador General plantea que el agente Díaz y su compañero intervinieron con el acusado apelante y su acompañante porque tenían motivos fundados para creer que éstos estaban cometiendo un delito en su presencia. En este sentido señala que "[n]o nos queda la menor duda de que es la propia actuación del acusado-apelante y su acompañante la que genera los acontecimientos que culminan en su arresto. Soltar las herramientas y alejarse corriendo del vehículo son los hechos que generan en el agente los motivos fundados para creer que en su presencia se estaba cometiendo un delito". Informe del Procurador General, pág. 5. El Procurador General argumenta, además, que estamos ante un caso de evidencia abandonada, excepción que hace innecesario acudir ante un juez para que éste expida una orden de registro y allanamiento, por lo que podía el agente del orden público proceder con el registro. Señala que, "cuando el agente regresa con su compañero y se acerca al vehículo, éste había sido 'abandonado' por los sospechosos" (íd.) lo que, a su entender, implica que "el acusado-apelante renunció tácitamente a su derecho ante un registro sin orden previa al abandonar el área sin que mediara coacción, fuerza o violencia de parte de los agentes" (íd., pág. 6). Añade que el apelante perdió toda "expectativa de privacidad" dado "el hecho no controvertido de que éste y su acompañante se encontraban desmantelando el vehículo hurtado a las 10:00 de la mañana, en un área claramente visible de [sic] todo el que transcurría por la calle". Íd.

La opinión mayoritaria concluyó que el error señalado no fue cometido. Fundamenta su decisión en que, a pesar de que el vehículo reportado como hurtado se hallaba en las inmediaciones o *curtilage* de la residencia del acusado apelante, el registro efectuado no fue irrazonable. Señala, además, que el arresto del acusado y su acompañante no fue ilegal, pues el mismo se realizó luego de que la Policía tuvo certeza de la comisión de un delito y motivos fundados para creer que el apelante lo había cometido.

Estamos de acuerdo con la mayoría en cuanto a que el área donde se encontró el vehículo Mitsubishi constituye el *curtilage* o "zona compuesta por el terreno y estructuras accesorias que junto a la casa constituyen una unidad de vivienda". Sentencia, pág. 290. Como bien señala la mayoría, no obstante que tanto el Art. II, Sec. 10 de nuestra Constitución, *supra*, como la Cuarta Enmienda a la Constitución de Estados Unidos, L.P.R.A., Tomo 1, extienden su protección contra registros y allanamientos irrazonables a las inmediaciones de una residencia o *curtilage, Pueblo v. Álvarez Solares*, 95 D.P.R. 789 (1968), no todo registro efectuado sin orden judicial previa debe considerarse irrazonable. Un registro de las inmediaciones de una residencia puede ser irrazonable o no dependiendo de si la persona que se halle en esa zona posee una expectativa legítima de intimidad. Así lo señala la mayoría al citar lo apuntado en el caso *Pueblo v. Rivera Colón*, 128 D.P.R. 672 (1991). En ese caso se enumeraron varios factores a considerar al momento de determinar qué constituye una expectativa legítima y razonable de intimidad. Estos factores aparecen citados en la Sentencia y, al aplicarlos al caso de autos, se puede concluir, como concluyó la mayoría de este Tribunal, que el acusado apelante carecía de expectativa legítima y razonable de intimidad en las inmediaciones de su residencia.

Sin embargo, a lo anterior hay que sumarle el hecho de que, en el caso de autos, el acusado apelante utilizó las

inmediaciones de su residencia para ubicar un negocio de taller de mecánica. La existencia de un negocio como el del apelante presupone una invitación de carácter general para que cualquier persona entre al área pública dedicada al mismo. Dicha entrada puede ser aun para propósitos que no estén relacionados con las transacciones que comúnmente se llevan a cabo en ese negocio. *United States v. Berrett*, 513 F.2d 154, 156 (1er Cir. 1975). Los funcionarios o agentes del orden público tienen igual derecho que un ciudadano particular de aceptar la invitación implícita y entrar al área del negocio. Dadas las particularidades del caso de autos, los agentes podían entrar únicamente al área aledaña a la residencia que razonablemente podía entenderse que era utilizada para los fines del negocio de mecánica del apelante. No podían atisbar ni entrar a la residencia, así como tampoco a otras áreas de las inmediaciones de la residencia de las cuales pudiera inferirse que el apelante tenía, en cuanto a ellas, una expectativa legítima y razonable de intimidad. Una vez se hallaban en la porción de las inmediaciones dedicada al taller de mecánica, los agentes podían explorar aquellos lugares del mismo a los cuales hubiesen tenido acceso libre e inmediato otras personas particulares. Podían, además, observar y examinar aquellos objetos que se hallaran a plena vista. *Pueblo v. Dolce*, 105 D.P.R. 422, 436 (1976); *United States v. Berkowitz*, 429 F.2d 921, 925 (1er Cir. 1970); 1 *LaFave and Israel, Criminal Procedure* Sec. 23.7, pág. 48 (1984). Después de todo, lo que una persona expone voluntariamente a la vista del público, sobre todo cuando lo hace en su negocio, no está sujeto a la protección constitucional contra registros y allanamientos irrazonables. *Katz v. United States*, 389 U.S. 347, 351 (1967).

Ahora bien, lo anterior no implica que los negocios estén totalmente desprovistos de la protección que, a este respecto, les concede la Constitución. El negociante, al igual que quien ocupa una residencia, está cobijado por este de-

recho constitucional para así poder desempeñar sus gestiones de negocio libre de la intervención gubernamental irrazonable en aquellas áreas privadas de su propiedad utilizadas con fines comerciales, áreas dentro del negocio cuyo acceso está vedado inclusive al público en general. *See v. City of Seattle*, 387 U.S. 541, 543 (1967), seguido en *Dow Chemical Co. v. United States*, 476 U.S. 227, 237 (1986); *LaFave and Israel*, supra, Sec. 3.9(e), pág. 320.

Sobre este particular, en *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207–209 (1984), resolvimos que la "regla general consagrada en el Art. II, Sec. 10 de la Constitución de Puerto Rico se aplica a los establecimientos comerciales" y que, salvo contadas excepciones, la garantía constitucional contra registros, allanamientos e incautaciones irrazonables cubre tanto los registros administrativos como los penales que se efectúen en dichos establecimientos. La regla general es a los efectos de que "todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, es irrazonable per se de llevarse a cabo sin orden judicial previa". Dicha regla "prevalece, a menos que se consienta al registro, directa o indirectamente, o circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta". *E.L.A. v. Coca Cola Bott. Co.*, supra, pág. 208.

No obstante, el caso de autos plantea una situación distinta a la analizada en *E.L.A. v. Coca Cola Bott. Co.*, supra. Aquí, la actuación de los agentes del orden público no constituyó un registro. Veamos.

### III

En el caso de autos, el agente Díaz declaró que, en unión al sargento Colón, entró específicamente a las inmediaciones de la residencia donde el acusado apelante tenía ubicado su taller de mecánica. A la luz de la doctrina antes expuesta, para entrar a ese lugar, que constituye el negocio

del apelante, los agentes no necesitaban obtener la autorización de un juez. Su entrada estuvo justificada bajo la teoría de la invitación pública que, se infiere, surge del hecho de establecer un negocio lícito. Allí no había rótulo alguno que prohibiese la entrada ni objeto físico que impidiese el acceso al taller. Los agentes del orden público se limitaron, una vez en el área del negocio, a observar lo que estaba a plena vista (el auto y las piezas del mismo que se encontraban en la camioneta), y a solicitar información sobre el vehículo desmantelado que allí encontraron. Debido a su experiencia como agente de la División de Vehículos Hurtados de la Policía, al agente Díaz le pareció que el hecho de encontrar el automóvil desmantelado y las piezas de éste en la camioneta allí estacionada era indicativo de que con toda probabilidad se trataba de un vehículo hurtado. Así, pues, se comunicó con la Comandancia de Bayamón para solicitar información sobre dicho auto. Una vez se confirmó que el mismo fue reportado hurtado, los agentes tuvieron motivos fundados para creer que el acusado y su acompañante cometieron tal delito, por lo que procedieron a arrestarlos. Al así actuar, no violaron las disposiciones constitucionales sobre registros y allanamientos irrazonables.

Por todo lo antes expuesto, procede confirmar la sentencia recurrida.