AA-96-13                                         |                    - 1 -

En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>    Recurrido<br><br>    V.<br><br>Antonio Ortiz Rodríguez<br>    Peticionario | Certiorari<br><br>99TSPR9 |
|---|---|

Número del Caso: CC-96-0227

Abogado de la Parte Peticionaria: Lcdo. Miguel E. Sagardía de Jesús

Abogados de la Parte Recurrida:    Hon. Carlos Lugo Fiol

                                   Procurador General
                                   Lcda. Carmen Z. Martínez Ortiz

                                   Procuradora
General Auxiliar

Tribunal de Instancia: Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Miguel A. Rivera Arroyo

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Negroni Cintrón

Fecha: 1/29/1999

Materia: Art. 401 Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante-Recurrido

       v.                          CC-96-227
Certiorari

Antonio Ortiz Rodríguez

    Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico a 29 de enero de 1999

El Ministerio Público acusó a Antonio Ortiz Rodríguez, (c.p. Toño Gorila), de dos (2) infracciones al Art. 401 de la Ley de Sustancias Controladas.[1] Previa vista preliminar y la subsiguiente lectura de

---

[1] Dispone:

"(a) Excepto en la forma autorizada en [esta Ley], será ilegal el que cualquier persona, a sabiendas o intencionalmente:

(1) Fabrique, distribuya, dispense, transporte u oculte, o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada;

(2) Produzca, distribuya o dispense, transporte u oculte o posea con la intención de distribuir o dispensar, transportar u ocultar una sustancia falsificada."

acusación, Ortiz Rodríguez solicitó supresión de la evidencia alegando que la orden de allanamiento era insuficiente de su faz y no existió causa probable para creer los fundamentos en que se basó. El Tribunal de Instancia, Sala de San Juan (Hon. Miguel Rivera Arroyo) la denegó. El Tribunal de Circuito de Apelaciones (Hons. Rossy García, Negroni Cintrón y Aponte Jiménez), declinó expedir el auto de certiorari. Inconforme, Ortiz Rodríguez acudió ante nos cuestionando la determinación de que los agentes del orden público no necesitaban orden judicial para penetrar áreas sobre las cuales "tenía una expectativa legítima de intimidad, validando de esa manera los subterfugios realizados por dichos agentes del orden público para evitar obtener una orden judicial, siendo insuficiente de su faz la orden de allanamiento en virtud de la cual se ocupó la evidencia en este caso".

En su correcta perspectiva, el planteamiento exige resolver si la policía, en el curso de una investigación, está legítimamente facultada para alquilar un apartamiento con el propósito de penetrar libremente en los elementos comunes de uso general del condominio, sin el consentimiento ni conocimiento de su administrador sobre el propósito investigativo, ni previa orden judicial.

I

En virtud de una confidencia, el 25 de abril de 1995 el agente Jorge L. Padró le informó a su compañero Juan R. Berríos Silva —ambos de la División de Drogas y Narcóticos—, de unos residentes del Edificio Núm. 615 de la Calle Condado, Santurce, que traficaban en drogas y guardaban allí armas. Entre estos se encontraba Ortiz Rodríguez. Al día siguiente,

ambos agentes acudieron al Condominio y constataron que Ortiz Rodríguez, aunque residía en el Apto. Núm. 682 del Edif. Núm. 33 del Residencial Luis LLoréns Torres, ocupaba el Apto. Núm. 205 del Condominio y poseía un vehículo Mitsubishi, color rojo, tablilla BNT-482, inscrito a su nombre.

El Condominio en cuestión es un edificio privado residencial de seis (6) apartamentos por piso, con acceso controlado. Solo se necesita llave para entrar al primer piso; de ahí en adelante, las personas pueden moverse libremente. El acceso hacia el pasillo del segundo piso, donde ubica el apartamento Núm. 205 de Ortiz Rodríguez, está restringido por un portón con cerradura. **No obstante, ese y demás portones de las escaleras permanecen abiertos por reglamentación en vigor del Cuerpo de Bomberos de manera que ante una situación de emergencia no representen obstáculos innecesarios. Consecuentemente, el portón hacia el descanso de las escaleras en el segundo piso está abierto y el usuario que se sitúa o detiene en dicho descanso no tiene obstrucción para observar la entrada del apartamento de Ortiz Rodríguez.**

Los agentes consultaron al fiscal José Vázquez Pérez, Director de la División de Drogas y Crimen Organizado del Depto. de Justicia, sobre cómo obtener acceso legítimo al Condominio. Vázquez Pérez les explicó que tenían tres (3) alternativas: conseguir una orden judicial; obtener permiso de la administración del Condominio; o alquilar un apartamento. Para preservar el mayor grado de confidenciali-dad en la investigación, los agentes optaron por alquilar el apartamento Núm. 305 el 4 de

mayo de 1995, mediante el pago de una renta mensual de $350.00.

El agente Berríos Silva acudió al área el 17 de mayo de 1995. Después de observar el vehículo marca Mitsubishi perteneciente a Ortiz Rodríguez estacionado en una calle contigua, entró al edificio y procedió al segundo piso. Desde el descanso en las escaleras del edificio antes aludido, estableció vigilancia hacia la entrada del apartamento de Ortiz Rodríguez. El apartamento tenía un portón de rejas frente a la puerta de entrada. Ese día el portón estaba abierto, pero la puerta cerrada. Ortiz Rodríguez salió del apartamento cargando una bolsa blanca a las 3:50 p.m. Berríos Silva lo siguió hasta llegar al Edificio Núm. 33 del Residencial Lloréns Torres. Ortiz Rodríguez se desmontó cargando dicha bolsa, sacó una envoltura pequeña de la bolsa, similar a las que se utilizan para empacar heroína, y se la entregó a un individuo. Al dar la vuelta, Berríos Silva vio a Ortiz Rodríguez entrar al Edificio Núm. 33 con dinero en sus manos.

El 23 de mayo, Berríos Silva se dirigió nuevamente al interior del Condominio después de observar el vehículo perteneciente a Ortiz Rodríguez estacionado cerca, y volvió establecer vigilancia hacia la entrada del apartamento de Ortiz Rodríguez desde las escaleras. Esta vez, la puerta del apartamento Núm. 205 se encontraba abierta, pero el portón cerrado. A plena vista, pudo observar cuando Ortiz Rodríguez a través del portón cerrado le entregó a un individuo que estaba en el pasillo fuera del apartamento un pequeño sobre plástico y transparente, lleno de una sustancia blancuzca, a cambio de indeterminada cantidad de dinero. Más tarde, Ortiz

Rodríguez salió del apartamento, cargando una bolsa de papel de estraza y un bulto azul, abordó su vehículo y se dirigió hacia el Residencial Lloréns Torres.

Berríos Silva continuó la vigilancia el 24 de mayo de 1995. Ese día vio cuando Ortiz Rodríguez llegó al Condominio, entró a su apartamento y salió cargando una bolsa plástica transparente conteniendo lo que aparentaban ser envolturas de heroína.

Berríos Silva prestó declaración jurada con relación a estos hechos. El 30 de mayo de 1995, el Tribunal de Primera Instancia determinó causa probable y expidió orden para allanar el referido apartamento. El allanamiento se realizó el 31 de mayo de 1995 y produjo sustancias controladas. Posteriormente, se radicaron las acusaciones y el planteamiento sobre supresión que origina este recurso.

## II

En momentos de violencia, alto uso de drogas, criminalidad y su consabido desasosiego en nuestro diario vivir, el fiel cumplimiento de la ley es de interés apremiante. Conlleva una evaluación judicial de aspectos difíciles y circunstancias complejas. De este ejercicio, en lo posible, deben surgir juicios certeros que reconcilien los intereses públicos y privados envueltos y provean soluciones justas, sin obstruir la labor de la policía en la persecución legítima del crimen. Pueblo v. Muñoz Santiago, res. en 6 de noviembre de 1992; Pueblo v. Pérez Pérez, 115 D.P.R. 827 (1984).

El Art. II, Sec. 10 de nuestra Constitución[2] y la Enmienda Cuarta federal, cobijan la intimidad y

---

[2] En lo pertinente, reza:

dignidad ciudadana como valores comunitarios de la más alta jerarquía. Pueblo v. Meléndez Rodríguez, res. en 13 de julio de 1994.

Su ámbito salvaguarda la vida íntima y santidad del hogar, pero no defiende el Derecho a propiedad; **protege seres humanos, no lugares**. Pueblo v. Vargas Delgado, 105 D.P.R. 335 (1976). Lo determinante es "[s]i existe algún interés personal sobre el objeto del allanamiento, registro o incautación de modo que se exhiba una **expectativa de intimidad**". Olga Elena Resumil de Sanfilippo, Derecho Procesal Penal, Tomo 1, Cap. 8, §8.4, pág. 207; Chiesa Aponte, E.L., Derecho Procesal Penal de Puerto Rico y Estados Unidos, Tomo I, Cap. 6, Sec. 6.13, págs. 404-405.

Los residentes de condominios tienen derecho a la intimidad en grado comparable a la que disfrutan los residentes de casas.[3] Pueblo v. Pérez Pérez, 115 D.P.R. 827, 830 (1984). Allí establecimos que "[p]or razones demográficas y de diversa índole se ha ido desarrollando en Puerto Rico el concepto de la propiedad horizontal. No hallamos base para sostener que en este país de mucha gente y poca tierra aquellos que resuelvan vivir en condominios no tienen derecho razonable a abrigar que su intimidad se respete a un

---

"[N]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

...

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales".

grado comparable al de los habitantes de residencias tradicionales. Un condómino espera que por los pasillos y otras áreas comunes del mismo transiten únicamente otros co-dueños y personas invitadas, en casos como el presente, los co-dueños tienen derecho a confiar que no pululen por las zonas protegidas invasores e intrusos. Los pasillos de los condominios no son calles de la ciudad, ni su garaje es menos privado que el de otro tipo de hogar".

Diez (10) años después, en Pueblo v. Meléndez Rodríguez, supra, enfatizamos que:

> "Nuestra sociedad no está dispuesta a tolerar el grado de intrusión que aquí ocurrió con la intimidad de los apelantes en su hogar. Entendemos que el **apostarse cerca de la puerta de una residencia con el propósito de escuchar lo que adentro se dice**, independientemente del derecho de tal persona de estar en el área circundante a la misma, constituye un atentado intolerable a los valores personales y sociales que protege nuestra Constitución. Ello es así sin importar que tipo de residencia esté envuelta. Rehusamos limitar las protecciones consagradas en Pérez Pérez, 115 D.P.R. 818 (1984), a los pasillos y áreas comunes de condominios privados de acceso controlado. No podemos negárselas a los ciudadanos que viven en los residenciales públicos de Puerto Rico.
>
> Más aún, entendemos que resulta irrelevante si el complejo de vivienda tiene acceso controlado... para fines de determinar si existe una expectativa razonable de intimidad. **El acceso a los complejos de vivienda se limita, no con el propósito exclusivo de aumentar la intimidad de los que viven allí, sino principalmente para incrementar la seguridad de sus residentes ante el avance del crimen. Resultaría incorrecto, entonces, utilizar este factor como determinante para medir la expectativa de intimidad de los residentes.**"

**La expectativa razonable de intimidad** implica **primero**, que la persona haya exhibido una **expectativa**

---

[3] El Tribunal Supremo de los Estados Unidos ha resuelto que la Enmienda Cuarta también cobija apartamentos y áreas cerradas al público. Clinton v. Virginia, 377 U.S. 158 (1964).

**subjetiva de intimidad.** No se trata de una simple reserva mental, sino de una conducta de actos afirmativos que demuestren, inequívocamente, la intención de alojar dicha expectativa. Y **segundo**, esa expectativa individual así demostrada, tiene que ser una que la sociedad reconozca como **razonable.**

El análisis para determinar la razonabilidad de un registro y allanamiento debe tomar en cuenta que el excluir cualquier actividad policíaca de la cubierta constitucional significa sacarla también del control judicial y del mandato de la razonabilidad. **Por el contrario, incluirla solo exige que sea razonable.**[4]

Determinar si existe una **expectativa razonable de intimidad** requiere examinar integralmente los siguientes factores: lugar registrado o allanado; naturaleza y grado de la intervención policial; objetivo o propósito de esa intervención; si la conducta de la persona era indicativa de una expectativa **subjetiva** de intimidad; **existencia de barreras físicas que restrinjan la entrada o la visibilidad al lugar registrado**; número de personas que tienen acceso legítimo al lugar registrado; e inhibiciones sociales relacionadas con el lugar registrado. Pueblo v. Meléndez Rodríguez, supra.

Al aplicar estos factores al caso de autos es evidente de que Ortiz Rodríguez no puede reclamar una expectativa razonable de intimidad absoluta. **El**

---

[4] Smith v. Maryland, 442 U.S. 735 (1979) incorporó el criterio esbozado por el Juez Harlan en su opinión concurrente en Katz v. United States, 389 U.S., 1353 (1967).

"La pregunta no es si una persona tiene que cerrar las cortinas antes de cometer un crimen. La pregunta es si una persona tiene que cerrar las cortinas cada vez que entra a un cuarto en caso de que lo estén vigilando." (Traducción nuestra). Anthony G. Amsterdam, Perspectives on the Fourth Amendment, 58 Minnesota Law Review 349, 403 (1974).

"Por lo tanto, el verdadero examen para determinar si la práctica en cuestión es constitucional es si el permitir la forma particular de vigilancia practicada por la policía disminuye la intimidad y la libertad de los ciudadanos a un ámbito inconsistente con una sociedad libre y abierta." (Traducción nuestra). (Id., págs. 349-403).

lugar "registrado" fue el pasillo y entrada visibles de un apartamento en un Condominio con acceso controlado. **La naturaleza y grado de la intervención policíaca** consistió en observar a plena vista, desde el descanso en las escaleras del segundo piso, la referida entrada del apartamento de Ortiz Rodríguez. **El propósito de la intervención** fue investigar y detectar alegadas violaciones a la Ley de Sustancias Controladas objetos de una confidencia, y así acumular suficiente prueba para acudir ante un tribunal y obtener una orden de registro y allanamiento. La **conducta de Ortiz Rodríguez** no indicaba una expectativa subjetiva legítima de intimidad, pues llevó a cabo varias transacciones de drogas a través del portón, a plena vista del agente Berríos Silva u otra persona que pasase por el segundo piso. **Todos los condóminos, dueños, inquilinos y sus respectivos invitados tenían acceso a las escaleras.** Desde el lugar donde el agente Berríos Silva observó, **no existía barrera física** alguna que impidiera la visibilidad. La entrada del apartamento de Ortiz Rodríguez podía verse "desde el pasillo, la escalera o desde cualquiera de los cinco apartamentos restantes ubicados en el piso." Comunitariamente, **existe un grado de inhibición social en cuanto al pasillo y las escaleras de un edificio.** Las costumbres sociales obligan a que las personas se comporten de forma prudencial y, más restringidamente, en los elementos comunes de uso general del condominio en contraste con el interior de sus apartamentos, donde gozan de una mayor expectativa de intimidad. **Ciertamente, no se discute, que el permitir tráfico**

**de drogas en los pasillos y escaleras de un edificio atenta contra el derecho de los demás condóminos al uso y disfrute pacífico de los elementos de uso común.**

**Este análisis, nos permite concluir que Ortiz Rodríguez no tenía una expectativa razonable de intimidad sobre los pasillos y las escaleras del edificio mientras los utilizaba para llevar a cabo transacciones ilegales.**[5]

III

No pasamos por alto la doctrina de "curtilage", esto es, las "inmediaciones" o estructuras accesorias de un hogar, hasta donde se extiende la protección del derecho a la intimidad. Pueblo v. Meléndez Rodríguez, supra.

Se trata del área considerada parte de la casa a la cual se extiende la actividad íntima del hogar y la persona. Determinarlo conlleva examinar si un individuo puede razonablemente esperar que el área inmediata al hogar permanezca privada, tomando en consideración los siguientes cuatro factores: 1) proximidad a la zona reclamada como "curtilage". Si está muy próxima es mucho más probable que el área sea considerada como "curtilage"; 2) si el área se encuentra dentro de los linderos de la casa; 3) la naturaleza y el uso que se le da a esa zona; y 4) las medidas adoptadas por el residente para proteger esta zona de observaciones que puedan hacer los transeúntes

---

[5] En Lewis v. United States, 385 U.S. 206, 211 (1966), el Tribunal resolvió que cuando "[e]l hogar es convertido en un centro comercial al que forasteros son invitados para propósitos de tramitar negocios ilícitos, ese negocio no tiene derecho a más santidad que la que retuviese en una tienda, en un garaje, en un vehículo o en la calle. Un agente gubernamental, de la misma forma que una persona privada, puede aceptar una invitación para hacer negocios y puede entrar en los predios para el mismo propósito contemplado por el ocupante." (Traducción nuestra).

que por allí pasan. Pueblo v. Meléndez Rodríguez, supra.

En el pasado, hemos reconocido que en el descargo de su función investigativa, la Policía puede entrar en áreas del "curtilage" de una residencia que están claramente visibles o implícitamente abiertas al público, con el propósito de conversar con los ocupantes de la residencia o procurar a alguna persona. Pueblo v. Meléndez Rodríguez, supra; Pueblo v. Torres Resto, 102 D.P.R. 532 (1974); Pueblo v. Alvarez Torres, 85 D.P.R. 789 (1968).

Sin embargo, "[c]uando un agente traspasa esa zona como parte de una gestión de vigilancia para observar a través de puertas y ventanas que no están claramente visibles, eso constituye un registro irrazonable." LaFave, Search and Seizure, 2d ed. Sec. 2.3(c), p. 394. Véase Texas v. González, 388 F. 2d 145 (5th Cir. 1968); People v. Cogle, 21 Cal. App. 3d 57 (1971); Olivera v. State, 315 So. 2d n487 (Fla. App. 1975); State v. Ragsdale, 381 So. 2d 492 (La. 1980). **La justificación de esta norma, es que al limitar la visibilidad de su hogar, el residente tiene una razonable expectativa de intimidad en el interior de su casa y no espera que las personas o agentes del orden público estén observando a través de las ventanas.**

En Pueblo v. Meléndez Rodríguez, supra, resolvimos que "[a]quella porción de los pasillos en condominios o edificios de **vivienda múltiple que conduce a la entrada de apartamentos y, en especial, el área inmediatamente fuera de la puerta de la entrada a un apartamento, es parte del curtilage de la vivienda próxima al mismo**. Nos parece razonable

concluir que a dicha área se 'extiende la actividad íntima asociada con la santidad del hogar'. Chiesa Aponte, E.L., Tomo I, Cap. 6, ob. cit., Sec. 6.16, pág. 432. Su proximidad al apartamento de vivienda 'por sí solo hace mucho más probable que el área sea considerada como curtilage'." (Citas omitidas). Así, en Pueblo v. Meléndez Rodríguez, supra, juzgamos como "intrusión irrazonable en la vida íntima" **la acción del agente acercarse a la puerta de una residencia para escuchar las conversaciones que se efectúan tras puertas cerradas.**"

"Cuando la policía, sin penetrar el 'curtilage' del acusado, recurre a medios extremos para lograr una posición desde donde ni los vecinos ni el público en general de ordinario lo esperaría, sus observaciones constituyen un registro." (Traducción nuestra). Wayne R. LaFave, ob. cit., Volumen 1, §2.3(c), pág. 482. Contrario sensu, **si sólo utiliza sus sentidos naturales desde un lugar donde tiene derecho a estar, tales observaciones no lo son.**

El residente de un edificio con múltiples viviendas tiene una expectativa de intimidad justificada de no ser escuchado o visto desde un lugar en el edificio el cual los otros residentes o el público normalmente no utilizan o esperen se utilice. "No obstante, una cosa es decir que un ocupante no puede reclamar privacidad en cuanto a actividades dentro de su residencia cuando la conducta se lleva a cabo en una manera fácilmente al alcance de la vista y oídos de los vecinos o el público que por allí transite. Es otra cosa exigir que los ciudadanos no puedan sentirse seguros dejando sus cortinas sin cerrar o en forma alterna, cerrar toda posible

apertura de su residencia." Wayne R. LaFave, <u>ob. cit.</u>, Volumen 1, §2.3(c), pág. 482 (Traducción nuestra).

**Esa no es la situación en el caso de autos. Las escaleras son utilizadas constantemente por los vecinos y otras personas, y podía la policía usarlas apropiadamente para establecer vigilancia.** Al respecto, Berríos Silva permaneció en todo momento en el descanso de las escaleras del segundo piso, elementos comunes de uso general por condóminos, empleados, visitantes y otros. Consecuentemente, por definición, dichas escaleras no formaban parte del "curtilage" del apartamento de Ortiz Rodríguez, y por ende no puede invocar su protección. Adjudicada su falta de expectativa subjetiva de intimidad, evaluemos su contención bajo la Regla de Exclusión.

IV

El Art. II, Sec. 10 de nuestra Ley Fundamental prohibe el producto de registros y allanamientos inconstitucionales; no es prueba admisible en los tribunales. <u>Pueblo</u> v. <u>Colón Rafucci</u>, res. en 25 de enero de 1996; <u>Pueblo</u> v. <u>Santiago Alicea</u>, res. en 18 de abril de 1995; <u>Pueblo en interés del menor N.R.O.</u>, res. en 12 de septiembre de 1994; <u>Pueblo</u> v. <u>Martínez Torres</u>, 120 D.P.R. 496, 500 (1988); <u>Pueblo</u> v. <u>Ramos Delgado</u>, 122 D.P.R. 287 (1988); <u>Pueblo</u> v. <u>González Rivera</u>, 100 D.P.R. 651 (1972); <u>Pueblo</u> v. <u>Rodríguez Rivera</u>, 91 D.P.R. 456 (1964).

A su amparo, la legalidad de tales registros deben analizarse tomando en cuenta tres (3) aspectos circunstanciales: 1) lugar objeto del registro; 2) presencia del concepto de **motivo fundado** para realizarlo; y 3) su razonabilidad.

En Pueblo v. Pérez Pérez, supra, establecimos que "[l]os condominios presentan a las fuerzas del orden público dificultades especiales para el establecimiento de una vigilancia ordenada. Como regla general, la solución radica, cuando la vigilancia exterior no basta, en que la Policía acuda ante un magistrado y obtenga, tras el trámite de rigor, su autorización para penetrar en las áreas comunes de la propiedad para establecer puntos de observación satisfactorios". **Este pronunciamiento exige una aclaración.** La orden allí referida es la **clásica** de Registro y Allanamiento, autorizada bajo las Reglas 229 a 233 de Procedimiento Criminal. **Nuestro ordenamiento procesal todavía no provee expresamente una orden especial que autorice una "vigilancia" de áreas comunes.** De inmediato, ello plantea el problema del quantum de prueba necesario. **No podría ser ni exigirse el mismo de causa probable.** Si así fuera no tendría sentido ni sería necesaria la vigilancia. Bastaría obtener la orden de registro y allanamiento. La vigilancia previa es necesaria porque se carece de esa prueba. **En el caso de autos, precisamente la vigilancia y sus observaciones fueron las que produjeron suficiente causa probable sobre actos delictivos para justificar la orden de registro y allanamiento.**

Ortiz Rodríguez argumenta que la orden de allanamiento fue insuficiente de su faz, pues ni de ésta, como tampoco de la declaración jurada, surgía el derecho de los agentes a penetrar las áreas comunes del condominio a investigar y violar su expectativa legítima. Se basa en que al momento de solicitarla, el agente de la policía no consignó en

su declaración jurada la forma en que él obtuvo acceso a las áreas comunes del edificio residencial, desde donde pudo observar alegados actos delictivos. **No tiene razón.**

En Pueblo v. Bogard, 100 D.P.R. 565 (1972), nos enfrentamos a una situación bastante similar. Allí se atacó la validez de la orden de allanamiento expedida por un magistrado alegándose que "[e]l Agente no hizo constar en su declaración jurada los medios de que se valió para observar el patio de la residencia de los apelantes." Resolvimos que "[l]a declaración jurada prestada por el agente Fuentes Ortega cumple con la ley y la jurisprudencia. Expuso el agente que las observaciones que hizo fueron el resultado de labor de vigilancia hacia el patio de la residencia de los acusados. Ello era suficiente para informar al magistrado como obtuvo la información sobre los hechos que justificaban la expedición de la orden de allanamiento." Este razonamiento fue reiterado en Pueblo v. Bonilla Romero, 120 D.P.R. 92, 108 (1987). En virtud de la Regla 231 de Procedimiento Criminal, el quantum **de causa probable** judicial como prueba necesaria para una orden de allanamiento, significa que el magistrado quede convencido. En el caso de autos, las declaraciones juradas prestadas por el agente Berríos Silva, revelan que entró al condominio y se ubicó en el área de las escaleras del segundo piso, donde observó lo que ocurría frente al apartamento de Ortiz Rodríguez. Basado en esta información se expidió la orden. El juez se convenció que los hechos jurados, a su juicio, **eran indicativos de que probablemente se estaba cometiendo o se había**

**cometido un delito**. La misma no adolecía de ningún defecto legal ni jurisprudencial.

<u>Pueblo</u> v. <u>Rivera</u>, 79 D.P.R. 742, 747 (1956), definió así el estándar para juzgar la existencia de causa probable:

> "El criterio o medida para juzgar si existe causa probable no puede expresarse en términos rígidos y absolutos: la cuestión estriba en determinar si los hechos y las inferencias que se derivan de los mismos, a juicio de una persona prudente y razonable, bastan para creer que se está cometiendo o se ha cometido el delito por el cual la ley autoriza la expedición de una orden de allanamiento. <u>Carroll</u> v. <u>United States</u>, 267 U.S. 132 (1925); <u>Steele</u> v. <u>United States</u>, 267 U.S. 498 (1925); <u>Dumbra</u> v. <u>United States</u>, 268 U.S. 435 (1925). Meras sospechas no constituyen causa probable pero tampoco es necesario que el juez quede convencido fuera de toda duda razonable de que se está violando la ley. Como indicó el Tribunal Supremo de los Estados Unidos en <u>Brinegar</u> v. <u>United States</u>, 333 U.S. 160, 175 (1949): 'Cuando nos referimos a causa probable... actuamos a base de probabilidades. Estas no son cuestiones técnicas: se trata de consideraciones prácticas y reales que surgen en la vida cotidiana a base de las cuales actúan hombres prudentes y razonables y no técnicos en derecho. La norma o regla en cuanto a la prueba, por consiguiente, depende de la cuestión que debe probarse'."[6]

No era necesario pues, que el agente Berríos Silva consignara en su declaración jurada el derecho que tenía para estar en posición de presenciar los actos delictivos. La encomienda judicial es armonizar el derecho e intervención a la intimidad individual con el fundamental interés del Estado de poner en vigor las leyes penales.

En ausencia de prejuicio, parcialidad, o error manifiesto, el juicio del magistrado que expide la orden –quien tuvo ante sí al declarante que

---

[6] <u>Ratio decidendi</u>, reiterado en <u>Pueblo</u> v. <u>Muñoz Santiago</u>, res. en 6 de noviembre de 1992.

prestó la declaración jurada-, merece posterior deferencia judicial, en cuanto a la credibilidad del declarante y la determinación de causa probable.[7]

A la luz de la totalidad de las circunstancias y demás factores pertinentes, concluimos que existió base sustancial y causa probable para expedir la orden de allanamiento. Réstanos examinar el aspecto del **consentimiento** a un registro, como excepción a orden judicial previa.

V

"Si un agente del orden público primero obtiene el consentimiento voluntario de alguien con autoridad para controlar el acceso a los lugares o cosas a registrarse, no necesita orden judicial. Así autorizado, puede entrar y hacer observaciones consistentes con el ámbito del permiso conferídole." Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, Third Edition, Volume 1, §2.3(b), pág. 475. (Traducción nuestra).

---

[7] En Pueblo v. Meléndez Rodríguez, res. en 13 de julio de 1994 – al analizar la determinación de causa probable de un magistrado al expedir una orden de allanamiento a base de una confidencia que denunciaba la venta de "bolita" en una propiedad-, citamos a Pueblo v. Muñoz Santiago, supra, y señalamos:

> "Aclaramos que al aplicar dichos criterios siempre hemos exigido que la confidencia haya sido corroborada por el agente ya sea mediante observación personal o por información de otras fuentes.' Pueblo v. Muñoz Santiago, supra, a la pág. 10080 (énfasis en el original), 22 Reiteramos que el análisis de la suficiencia de dichas declaraciones juradas también debe tomar en cuenta los criterios que hemos establecido respecto a los testimonios estereotipados. Ahora bien, al ejercer nuestra facultad revisora, no nos corresponde hacer una determinación de novo de causa probable: '[s]ólo nos corresponde estimar si la evidencia considerada en su totalidad proveía una base sustancial para la determinación de causa probable por el magistrado'."

Precisamente, en <u>Pueblo</u> v. <u>Pérez Pérez</u>, <u>supra</u>, al cualificar la regla general de que la policía acudiera al tribunal para obtener orden de entrada, aclaramos vía escolio que "[c]uando el administrador de un edificio, su delegado u otro inquilino autorice la entrada de un policía a un condominio..., varios tribunales reconocen entonces que la actuación de la Policía al vigilar áreas comunes es legítima." (Traducción nuestra). Pág. 831 n. 2. Véase, Wayne R. LaFave, <u>ob. cit.</u>, Volumen 1, §2.3(b), pág. 478-479.[8]

En el caso de autos, la Policía, como parte de una investigación legítima, alquiló un apartamento en el Condominio para poder entrar al edificio y establecer vigilancia. **Ni la Constitución ni la ley lo prohiben; tampoco se trata de una decisión o actuación irrazonable.** Ese arrendamiento brindó a los agentes el mismo acceso a las áreas comunes del condominio que le brindaría a cualquier otro arrendatario. Entre éstos, entrar al ascensor, escaleras y otras áreas comunes del edificio, pero no, naturalmente al apartamento de Ortiz Rodríguez.[9]

Aún así, Ortiz Rodríguez argumenta que Berríos Silva nunca se identificó como agente del orden (o encubierto), ante la Administradora del Condominio al alquilar el apartamento.[10] Sostiene que dicho

---

[8] Como regla general, si un agente entra legalmente al área común de un predio, puede realizar allí su vigilancia. <u>McDonald</u> v. <u>United States</u>, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153 (1948).

[9] Bajo la Ley de Propiedad Horizontal, **las escaleras constituyen elemento general del inmueble**. 31 L.P.R.A. sec. 1291i (b). Cada titular puede usar los elementos comunes conforme su destino, sin impedir o estorbar el legítimo derecho de los demás. 31 L.P.R.A. sec. 1291l, ¶1.

[10] En <u>Lewis</u> v. <u>United States</u>, <u>supra</u>, 209, el Tribunal Supremo de los Estados Unidos sostuvo "[q]ue en la detección de muchos tipos de delitos, el Gobierno tiene derecho a usar señuelos y el ocultar la identidad de sus agentes. Las varias protecciones de la Carta de

agente no utilizó el apartamento como residencia, u otro fin que no fuese obtener libre acceso a los elementos comunes de uso general, para así continuar con su investigación sin obtener una previa orden judicial, dado a que dicho condominio tenia control de acceso. **Tampoco tiene razón.**

La prueba no contradicha demuestra que la administradora del Condominio no fue informada sobre el propósito del alquiler, debido a la posibilidad de que ella estuviese involucrada con Ortiz Rodríguez –lo cual podía comprometer la investigación– y de no ser así, en la alternativa, temían por su seguridad, dado al gran riesgo que presentaba dicha investigación y alto nivel de confidencialidad requerido para poder vigilar el lugar, especialmente en el área del segundo piso.

Los agentes se limitaron a alquilar el apartamento sin dar explicaciones al respecto, como tampoco comunicaron ni expusieron su condición de encubiertos.[11] Nada hay de ilegal en esa conducta. **El alto grado de confidencialidad de la investigación, las medidas de seguridad y el mecanismo de alquilar un apartamento, no violan ninguna disposición de nuestra Constitución.** Aplicable el siguiente razonamiento:

---

Derechos, por supuesto, proveen control sobre tales engaños oficiales para la protección del individuo." (Traducción nuestra).

[11] Ortiz Rodríguez añade que el ocultarle al agente Berríos Silva "su verdadera identidad a la Administradora del condominio en cuestión, con el propósito de obtener de ella el 'alquiler' de dicho apartamento, constituye un acto inpermisible desde el punto de vista de la protección constitucional contra el derecho a la intimidad. U.S. v. Bosse, 898 F. 2d 113 (9th Cir. 1990)". **Carece de razón**.

U.S. v. Bosse, lo primero que estableció fue que "un agente puede, de manera consistente con la Enmienda Cuarta, ocultar su identidad para de ese modo, obtener una invitación para entrar al hogar de un sospechoso... La entrada encubierta estará limitada a los propósitos contemplados en la sospecha. Una vez dentro del hogar del sospechoso, el agente no puede hacer un registro general en búsqueda de materiales delictivos." Pág. 211, (traducción nuestra y citas omitidas).

"[s]i fuéramos a sostener que la decepción del agente en este caso está constitucionalmente prohibida, nos aproximaríamos a una regla en la que el utilizar un agente encubierto en cualquier forma, sería virtualmente inconstitucional _per se_. Una regla así, por ejemplo, impediría severamente al Gobierno destapar esas actividades criminales organizadas, que son caracterizadas por negocios secretos con víctimas que no pueden o quieren protestar. Proveyendo el narcotráfico un principal ejemplo." _Lewis_ v. _United States_, _supra_, 210. (Traducción nuestra).

Por último, Ortiz Rodríguez aduce que "el agente Padró le omitió a sus superiores lo relacionado a la alternativa de obtener una orden judicial para penetrar las áreas comunes del edificio, induciendo falsamente a sus superiores a creer que, de acuerdo al Fiscal Vázquez Pérez, la única manera legal de obtener acceso al interior del condominio, sin obtener autorización de la persona encargada de la administración del condominio, era alquilando un apartamento allí". No nos convence.

_Primero_, el argumento no tiene que ver (ni es pertinente) con la doctrina del consentimiento. _Segundo_, es especulativo argumentar que el memorándum del 27 de abril de 1995, contiene una falsa representación al Teniente Juan Ortiz Díaz. En dicho documento, el agente Padró González no mencionó la posible obtención de una orden judicial. **Ello es irrelevante, pues en ese momento carecía de la información necesaria para poder obtener válidamente una orden judicial de acuerdo a los requisitos de causa probable bajo la Regla 231 de Procedimiento Criminal.** Según mencionáramos, debe

recordarse que en nuestro ordenamiento procesal penal no existe <u>per se</u> una orden judicial autorizando una vigilancia. Repetimos, **su obtención exigiría el <u>quantum</u> de prueba sobre causa probable**.

VI

En resumen, reafirmamos que la protección contra registros y allanamientos del Art. II Sec. 10 de nuestra Constitución, se extiende a "los pasillos y otras áreas comunes de estructuras de vivienda pública, sin hacer distinciones entre condominios privados con acceso limitado y residenciales públicos. Nuestra Carta de Derechos brinda una misma protección contra intrusiones irrazonables por parte del Gobierno, ya seamos ricos o pobres, inocentes o culpables", <u>Pueblo</u> v. <u>Meléndez Rodríguez</u>, <u>supra</u>.

En los edificios con múltiples unidades de vivienda el residente tiene un derecho a la intimidad absoluto sólo sobre una porción; no sobre aquellas áreas que, por su estructura son áreas adyacentes y están abiertas o expuestas al público o al uso común. En reconocimiento de esta realidad, la tendencia judicial es sostener que sobre las mismas sólo hay una expectativa de intimidad reducida. Wayne R. LaFave, <u>ob. cit.</u>

Una vigilancia sobre un predio, aún cuando pueda ser un registro, no está al mismo nivel de aquel que conlleva la entrada física o a un escrutinio de los objetos que allí se encuentren. E**n materia de vigilancia, la regla es menos estricta**. <u>Texas</u> v. <u>González</u>, 388 F. 2d 145 (5th Cir. 1968); <u>Borum</u> v. <u>United States</u>, 318 A. 2d 590 (D.C. App. 1974).

En el caso que nos ocupa, mediante el arrendamiento del apartamento, la policía validó su

entrada a los elementos de uso común del edificio. En Meléndez Rodríguez, supra, adoptamos una interpretación liberal del derecho a la intimidad para equiparar los residenciales públicos a los edificios con acceso controlado. **En aquella ocasión la práctica condenada fue que un policía escuchara una conversación dentro de un apartamento a través de una puerta cerrada.** Esa no es la situación en el caso de autos. El agente Berríos Silva con sus observaciones nunca penetró **dentro del apartamento.** Fue desde las escaleras que observó lo que cualquier otro condómino hubiese percibido: unas transacciones ilegales a simple vista realizadas desde la entrada de un apartamento al pasillo. **No se violó el derecho de  intimidad de Ortiz Rodríguez.**

Se dictará la correspondiente sentencia confirmatoria.


ANTONIO S. NEGRON GARCIA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Demandante-Recurrido


        v.                                    CC-96-227
Certiorari


Antonio Ortiz Rodríguez

    Demandado-Peticionario


SENTENCIA


San Juan, Puerto Rico a 29 de enero de 1999


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma la Resolución del Tribunal de Circuito de Apelaciones de fecha 10 de mayo de 1996.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión Concurrente en parte y Disidente en parte. El Juez Asociado señor Rebollo López disintió sin opinión escrita. El Juez Presidente señor Andréu García se inhibió.


Isabel Llompart Zeno

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

***El Pueblo de Puerto Rico***
Recurrido

v.                                CC-96-227

Antonio Ortiz Rodríguez

   Recurrente

Opinión Concurrente en parte y Disidente en parte emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico a 29 de enero de 1999.

Por entender que la interpretación que hace hoy este Tribunal sobre el alcance de la protección contra registros, incautaciones y allanamientos irrazonables de nuestra Constitución en el contexto de las áreas comunes de un edificio multipisos erosiona significativamente su vitalidad, estamos impedidos de suscribirla. Por ello, disentimos de los pronunciamientos de este Tribunal en relación a que el mero hecho de arrendar un apartamento en un edificio multipisos legitima la presencia de funcionarios del orden público en sus áreas comunes. No obstante, estimamos que por otros fundamentos

la Resolución recurrida debe ser confirmada. Por ello, concurrimos con el resultado al cual llega la Opinión del Tribunal.

## I.

Los hechos del caso son sencillos y no están en controversia. En abril de 1995 el agente Jorge L. Padró González, miembro de la División de Drogas y Narcóticos del Area Metropolitana de San Juan, recibió una confidencia en términos de que en el condominio 615 de la Calle Condado en Santurce residían varias personas que se dedicaban al trasiego de sustancias controladas.  Luego de ello, en unión al agente Juan R. Berríos Silva, Padró González obtuvo asesoramiento de la División de Drogas y Crimen Organizado del Departamento de Justicia en torno a las formas adecuadas de realizar la investigación a fin de obtener evidencia delictiva que eventualmente permitiera obtener una orden judicial para allanar y registrar el apartamento que fue objeto de la confidencia.

En esa ocasión, el Director de dicha división, Fiscal José Vázquez Pérez, les informó que para tener acceso al interior del edificio para realizar gestiones investigativas debían obtener una orden judicial o el consentimiento del administrador del edificio. En la alternativa, les indicó que de no obtener la orden judicial o el consentimiento del administrador, debían arrendar un apartamento en el condominio.

Luego de los trámites administrativos requeridos, la Policía alquiló por un mes el apartamento número 305 en el tercer piso del condominio. Desde allí la Policía realizó gestiones investigativas conducentes a obtener evidencia delictiva que le permitiera gestionar una orden para registrar el apartamento 205, propiedad del aquí imputado. Parte de las observaciones vertidas en la declaración jurada que sirvió de base a la expedición de la orden de registro fueron realizadas desde el pasillo y escalera que conducía al apartamento del imputado, áreas comunes de los residentes del condominio. Otras de las observaciones de los agentes investigadores fueron realizadas a las afueras del condominio, es decir en las vías públicas del país.

Luego de expedida la orden de registro y allanamiento, la Policía ocupó evidencia delictiva (sustancias controladas) en el interior del apartamento del imputado. En el eventual procedimiento judicial por dos cargos por infracción al Art. 401 de la Ley de Sustancias Controladas, (posesión de sustancias controladas con intención de distribuirlas),[12] la defensa solicitó la supresión de la evidencia bajo el fundamento de que la obtención de la evidencia que sirvió de base a la expedición de la orden de allanamiento fue obtenida en violación de la Sección 10 del Art. II de la Constitución del Estado Libre Asociado.

El foro de instancia denegó la supresión solicitada. El Tribunal de Circuito de Apelaciones, a su vez, denegó expedir el auto de certiorari para revisar la determinación del foro de instancia.

Inconforme con esta determinación, Ortiz Rodríguez acudió ante este Foro mediante petición de certiorari. En su único señalamiento nos plantea que erró el Tribunal de Circuito de Apelaciones al resolver que los agentes del orden público no necesitaban obtener una orden judicial para lograr acceso a las áreas comunes del edificio y desde allí realizar gestiones investigativas. Así pues, la única controversia que tenemos ante nuestra consideración es si la obtención de la evidencia que dio base a la expedición de la orden de allanamiento fue obtenida en violación de la Sección 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.

II.

La protección constitucional contra registros, allanamientos e incautaciones irrazonables que provee la Sección 10 del Art. II de la

---

[12]   Dispone el referido Art., en lo pertinente:

(a) Excepto en la forma autorizada en [esta Ley], será ilegal el que cualquier persona, a sabiendas o intencionalmente:

(1) Fabrique, distribuya, dispense, transporte u oculte o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada;

Constitución del Estado Libre Asociado de Puerto Rico tiene como finalidad proteger la intimidad de las personas frente a actuaciones irrazonables y arbitrarias por parte del Estado.[13] Pueblo v. Yip Berríos, Opinión y Sentencia de 30 de enero de 1997, 142 D.P.R. ____ (1997); Pueblo v. Santiago Alicea, Opinión y Sentencia de 18 de abril de 1995, 138 D.P.R. ____ (1995). Véanse, 1 Ernesto L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos 283 (1991); 1 Olga Elena Resumil de Sanfilippo, Derecho Procesal Penal 203 et seq. (1990). De este modo, y conforme a vasta jurisprudencia sobre el tema, bajo la Sección 10 del Art. II de nuestra Constitución, al Estado le está vedado intervenir con la intimidad individual en ausencia del consentimiento del intervenido, una orden judicial basada en causa probable, la existencia de motivos fundados para creer que la persona con la que se intervendrá ha cometido o esté en vías de cometer un delito, o circunstancias excepcionales que le impriman razonabilidad a la gestión gubernamental.[14]

---

(2) Produzca, distribuya o dispense, transporte u oculte o posea con la intención de distribuir o dispensar, transportar u ocultar una sustancia falsificada.

[13] El texto constitucional dispone, en lo pertinente:

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

...

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

Const. de P.R., Art. II, Sección 10.

[14] Así, por ejemplo, en el pasado hemos validado los registros superficiales incidentales a un arresto válido, Pueblo v. Zayas Fernández, 120 D.P.R. 158 (1987); los registros efectuados ante circunstancias apremiantes para preservar evidencia, Pueblo v. González Román, 110 D.P.R. 651 (1972), los registros tipo inventario, Pueblo v. Rodríguez Rodríguez, 128 D.P.R. 438 (1991); y los registros e incautaciones realizados en donde en el balance de los intereses involucrados la gestión gubernamental resulta razonable, Pueblo v. Falú Martínez, 116 D.P.R. 828 (1986); Pueblo v. Yip Berríos, supra.

En Puerto Rico, como en Estados Unidos bajo la Cuarta Enmienda de la Constitución federal,[15] el criterio rector para determinar si existe protección bajo la disposición constitucional es si quien la reclama tiene una expectativa legítima a que su intimidad sea respetada según las circunstancias específicas que rodean ese reclamo. E.L.A. v. P.R. Telephone Company, 114 D.P.R. 394 (1983). Así pues, ese análisis no se da en abstracto, se da en el contexto específico de los hechos que rodean la intervención estatal que ha sido impugnada, ya sea un registro, un allanamiento o una incautación.

Para evaluar si un reclamo de expectativa a la intimidad es razonable, es necesario examinar varios factores, ninguno de los cuales es determinante per se. En este sentido, es preciso examinar: (1) el lugar registrado o allanado; (2) la naturaleza y grado de intrusión de la intervención; (3) el objetivo o propósito de la intervención; (4) si la conducta de la persona indica que albergaba una expectativa de intimidad subjetiva; (5) la existencia de barreras que impidan el acceso o visibilidad del lugar; (6) el número de personas que tienen acceso al lugar en cuestión; (7) y las inhibiciones sociales relacionadas con el lugar registrado. Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991).

Asimismo, en el pasado hemos reconocido que la protección constitucional contra registros y allanamientos irrazonables se extiende a las áreas contiguas o adyacentes a una residencia ("curtilage"). Id. El fundamento para ello consiste en que tales áreas de ordinario se asocian con la actividad íntima que ocurre dentro de una residencia. Es posible, sin embargo, el acceso de agentes del Estado a esas áreas comprendidas dentro del "curtilage" cuando tales áreas **est[án] implícitamente abierta[s] al público**, mas ello ha de hacerse con el propósito de conversar con los ocupantes de la residencia o preguntar por alguna persona". Pueblo v. Meléndez Rodríguez, Opinión y Sentencia de 13 de junio de 1994, 136 D.P.R. ___ (1994) (énfasis suplido). Véanse, Pueblo v. Torres Resto, 102 D.P.R. 532 (1974) (en donde resolvimos que no constituye un registro ilegal la entrada de la Policía a los predios de una residencia en aparente estado de abandono, rodeada de una cerca de madera sin candado

---

[15] Como se sabe, la Cuarta Enmienda Federal establece sólo el ámbito mínimo de protección que los estados y Puerto Rico están

para conversar con sus posibles ocupantes); Pueblo v. Alvarez Solares, 85 D.P.R. 789 (1968) (en donde resolvimos que no constituye un registro ilegal la entrada de un agente del Estado a través de un portón sin candado para tocar en la puerta de entrada de una residencia cuando intentaba encontrar a una persona).

Ahora bien, hemos reconocido que "[a]quella porción de los pasillos en condominios o edificios de vivienda múltiple que conduce a la entrada de apartamentos y, en especial, el área inmediatamente afuera de la puerta de entrada a un apartamento, es parte del curtilage de la vivienda próxima al mismo". Pueblo v. Meléndez Rodríguez, supra. Fundamentamos esta conclusión en la convicción de que a esas áreas se extiende la actividad íntima que se asocia al interior del apartamento. Por tal razón, además, hemos reconocido que la entrada de funcionarios del orden público a tales áreas comunes de un edificio de vivienda múltiple, constituye un registro bajo la parámetros de la Sección 10 del Art. II cuando las circunstancias revelan que quienes residen en el edificio poseen una expectativa a que su intimidad en esas áreas sea respetada.

Fue a la luz de este razonamiento que en Pueblo v. Pérez Pérez, 115 D.P.R. 827 (1984) reconocimos como razonable un reclamo de expectativa a la intimidad realizado en el contexto de las áreas comunes de un edificio multipisos. Allí destacamos que "los pasillos de los condominios no son calles de la ciudad, ni su garaje es menos privado que el de otro tipo de hogar". Al así actuar reconocimos que un reclamo de expectativa a la intimidad efectuado por un ciudadano que reside en un edificio multipisos con relación a las áreas comunes del mismo resulta razonable a un grado comparable con la expectativa a la intimidad de los ciudadanos que residen en residencias particulares.

Asimismo, recientemente, reafirmamos nuestros pronunciamientos en Pérez Pérez al extender la norma a las áreas comunes de residenciales públicos. De tal modo, en Pueblo v. Meléndez Rodríguez, supra, afirmamos que: "[r]ehusamos limitar las protecciones consagradas en Pérez Pérez, [...] a los pasillos y áreas comunes de condominios privados de acceso controlado. No podemos negárselas a los ciudadanos que viven en los residenciales públicos de Puerto Rico".

---

obligados a reconocer.

Claro está, las diferencias funcionales entre áreas comunes y el interior de un apartamento podrían conducir al reconocimiento de una mayor protección constitucional dentro de los apartamentos que en el contexto de las áreas comunes.   Este análisis, sin embargo, deberá hacerse caso a caso.

Conforme a estos pronunciamientos, la norma en Puerto Rico ha sido que la validez de la entrada de funcionarios del orden público a las áreas comunes de un edificio multipisos supone la previa obtención de una orden judicial basada en causa probable, la existencia de circunstancias apremiantes, o el consentimiento de algunos de los residentes del referido edificio. Ausente alguna de estas circunstancias, la entrada de funcionarios del orden público a lugares en los cuales resulta razonable un reclamo de expectativa a la intimidad por una persona está prohibida por nuestra Constitución.

Con la anterior discusión en mente, examinemos la controversia específica que tenemos ante nuestra consideración y lo resuelto en la Opinión del Tribunal.

III.

A.

En el caso de autos, la controversia central es si la Policía violó la disposición constitucional contra registros y allanamientos irrazonables de nuestra Constitución al alquilar un apartamento de un edificio multipisos para realizar gestiones investigativas dentro de sus áreas comunes.

Al respecto, la Opinión resuelve que "[e]n el caso que nos ocupa, mediante el arrendamiento, la policía validó su entrada a los elementos de uso común del edificio". Opinión del Tribunal, a la pág. 21. Añade "[e]se arrendamiento brindó a los agentes el mismo acceso a las áreas comunes del condominio que le brindaría a cualquier otro arrendatario. Entre éstos, entrar al ascensor, escaleras y otras áreas comunes del edificio [...]". Opinión del Tribunal, a la pág. 18.

En términos prácticos, esta afirmación reconoce que el interés propietario adquirido por el Estado al arrendar le confiere derecho a realizar gestiones investigativas en zonas que de otro modo no hubiese podido lograr acceso sin la obtención de una orden judicial o el consentimiento de alguno de los residentes. Dicho de otro modo, la Opinión concluye que, en el caso de autos, el derecho de arrendamiento obtenido con el fin de realizar gestiones investigativas le permite al Estado evadir el requisito constitucional de obtener una orden judicial basada en causa probable para intervenir con la ciudadanía en zonas en las cuales puede resultar razonable un reclamo de expectativa a la intimidad.

Los peligros de la conclusión mayoritaria son evidentes. Si el derecho propietario le confiere validez jurídica a la entrada de funcionarios del orden público a áreas en las cuales éstos sólo podrían entrar legítimamente luego de obtener una orden judicial o el consentimiento de los inquilinos, el Estado podría lograr acceso con fines exclusivamente investigativos no sólo al tipo de área común del caso de autos, sino también a una habitación de un hospedaje o a una vivienda múltiple con sólo alquilar un cuarto, o en algunos contextos aún más extremos, una cama. Esta práctica representa un serio atentado al derecho a la intimidad, más aún ante la amplitud de los pronunciamientos de la Opinión del Tribunal.

La expectativa de intimidad que razonablemente pueden reclamar las personas que residen en un edificio multipisos con relación a las áreas comunes ha sido caracterizada como una expectativa a la intimidad compartida entre sus residentes. Se ha destacado que no se trata meramente de unos propietarios que comparten unas áreas comunes, sino más bien de residentes de una misma casa que esperan que su intimidad no sea violada por extraños. People v. Garriga, 596 N.Y.S.2d 25 (1993) ("[W]e believed that the officers here, by entering the internal hallways of the defendants' rooming house to find him engaged in a criminal transaction, entered the defendant´s home in a constitutional

sense"); <u>Reardon</u> v. <u>Wroan</u>, 811 F.2d 1025 (7th Cir.1987); <u>State</u> v. <u>Titus</u>, 707 So.2d 706 (1998) ("The mere fact that certain rooms traditionally associated with a home are shared by rooming house residents does not render the structure any less a home to those residents", a la pág. 708).

Cada titular de un cuarto de hospedaje o de un apartamento en un edificio de vivienda múltiple tiene un interés legítimo en que la integridad y seguridad de la totalidad de la estructura sea respetada por los extraños. <u>Véase</u>, <u>McDonalds</u> v. <u>U.S.</u>, 335 U.S. 451 (1948). Esto significa que quienes residen en una estructura en la que comparten distintas áreas o en edificios multipisos cuyas particularidades impiden que extraños penetren en él, esperan que sólo entren a los pasillos y áreas comunes del edificio los residentes y sus invitados. De este modo, de ordinario, resulta razonable un reclamo de expectativa a la intimidad por parte de un titular legítimo con relación a los pasillos y áreas comunes de un edificio cuyas particularidades físicas denotan un interés de evitar la entrada de extraños ("tresspasers").

Ciertamente, al concebirse tal expectativa a la intimidad como una compartida entre los inquilinos, podría resultar irrazonable reclamarla en las áreas comunes en relación a las personas que tienen acceso legítimo a dichas áreas.  Sin embargo, se ha afirmado que: "There is still a reasonable expectation of privacy as to those without a right of access. The accused only assumes the risk that a person with a right of access will disclose and not that the police will enter without permission of common users." 1 John Wesley Hall, Jr., <u>Search and Seizures</u> Sec. 11.2 (2da ed. 1991).

Claro está, la protección de esas áreas supone un análisis caso a caso, de forma tal que pueda examinarse la expectativa a la intimidad subjetiva que existe por quienes comparten esas áreas para proteger adecuadamente el derecho a la intimidad de la ciudadanía y la potestad legítima del Estado de investigar el crimen.

En el caso de autos, no podemos reconocer que el Estado legitimó su entrada a las áreas comunes del edificio por el mero hecho de haber arrendado un apartamento. Hacerlo, sería reconocer implícitamente que el Estado se hizo partícipe de ese ámbito de intimidad que comparten los residentes del edificio y que los coloca en una situación común frente a extraños.

Como se sabe, el derecho a la intimidad de la ciudadanía, para propósitos de la Sección 10 del Art. II de la Constitución del Estado Libre Asociado, de ordinario, se reconoce frente a actuaciones del Estado. Por lo tanto, reconocer que al alquilar un apartamento el Estado se convirtió para todos los propósitos en un arrendatario, con derecho de acceso a las áreas comunes del edificio constituye un contrasentido. El Estado no tiene derecho a la intimidad. Por lo tanto, no puede ser copartícipe de la expectativa a la intimidad que poseen los arrendatarios del edificio, que es en última instancia lo que le confiere legitimidad a su presencia en las áreas comunes. Dicho de otro modo, el Estado no dejó de ser extraño para los residentes del edificio al arrendar el apartamento.

No negamos que la utilización de agentes encubiertos por parte del Estado constituye una gestión válida para investigar y evitar el crimen. Sin embargo, la conclusión a la que llega hoy este Tribunal le confiere primacía al derecho propietario que pudiera obtener el Estado sobre el derecho a la intimidad de la ciudadanía, razonamiento que resulta extraño aún bajo la protección constitucional mínima que los estados y Puerto Rico vienen obligados a reconocer a las personas en el contexto de la protección constitucional contra registros, incautaciones y allanamientos irrazonables. De este modo, bajo la noción simplista de que "[n]i la Constitución ni la ley lo prohiben", Opinión del Tribunal, a la pág. 18 (énfasis omitido), la Opinión del Tribunal cansagra un serio atentado a dicha protección constitucional al validar una práctica que pudiera generar arbitrariedad por parte de los funcionarios estatales al intervenir con la intimidad individual.

B.

Existen otras razones que impiden que refrendemos la Opinión del Tribunal. En primer lugar, contrario a la tesis mayoritaria, en el caso de autos la razonabilidad del reclamo a la expectativa a la intimidad no depende de la naturaleza de las actividades —delictivas o no— realizadas por el imputado Ortiz Rodríguez. Por ello, es incorrecta la conclusión del Tribunal en términos de que "Ortiz Rodríguez no tenía una expectativa razonable de intimidad sobre los pasillos y las escaleras del edificio mientras los utilizaba para llevar a cabo transacciones ilegales". Opinión del Tribunal, a la pág. 10 (énfasis omitido). Esta aseveración soslaya claros preceptos jurídicos que postulan que el hecho de que una persona esté realizando actividades delictivas no hace irrazonable un reclamo de expectativa de intimidad. Véase, Wayne R. LaFave, Search and Seizures sec. 2 (1996).

En segundo lugar, la lectura de la Opinión del Tribunal al discutir la razonabilidad del reclamo de expectativa a la intimidad de Ortiz Rodríguez crea la falsa impresión de que nos encontramos ante un edificio al cual el público puede tener acceso fácilmente. **Se trata de un edificio que tiene un portón de entrada principal que permanece cerrado bajo llave**. Sólo los inquilinos y sus invitados tienen acceso al edificio. Ningún extraño, ni funcionario del orden público puede entrar al edificio a menos que obtenga el consentimiento de alguno de los residentes. Este dato ha sido considerado por diversos tribunales como justificación adecuada para concluir que los residentes de un edificio poseen una expectativa razonable a la intimidad en las áreas comunes del edificio. Véanse, U.S. v. Carriger 541 F.2d 545 (6to Cir. 1976); U.S. v. Fluker, 543 F.2d 709 (9no Cir. 1976); U.S. v. Case, 435 F.2d 766 (7mo Cir 1970); U.S. v. Blank, 251 F.Supp. 166 (1966); People v. Trull, 380 N.E.2d 1169 (1978) ("[W]e conclude that the common entries and hallways of a locked apartment building are protected by the fourth amendment"). Véanse además, People v. Farrow, 642 N.Y.S.2d 473 (1996) ("In this case there is no evidence to support a finding

that the front door was locked or that ingress was limited to tenants or authorized individuals via a doorman or some other means such as signs or other posted notices", a la pág. 712). State v. Batista, 524 So.2d 481 (1988) ("[N]o resident of the unlocked and unsecured premises [of the] apartment building in the present case could have had [...] a reasonable expectation [to privacy] in shared areas", a la pág. 482).

Todo lo anterior, impide que refrendemos la Opinión del Tribunal. Aún así, estimamos, que a la luz de los hechos específicos que tenemos ante nuestra consideración, las declaraciones juradas que tuvo el juez ante sí proveían suficientes elementos independientes a las observaciones de la Policía en las áreas comunes del edificio que validan la expedición de la orden de allanamiento contra el apartamento de Ortiz Rodríguez. Elaboremos.

**IV.**

Surge de los autos del caso que además de la vigilancia en el interior del edificio, al cual la Policía logró acceso al alquilar el apartamento, la Policía realizó amplia vigilancia en el exterior del mismo y en las vías públicas del país. En este sentido, los funcionarios del orden público investigaron las actividades de Ortiz Rodríguez en áreas públicas. Así por ejemplo, consta en la orden de allanamiento los siguientes hechos que a nuestro juicio configuran el quantum de prueba necesario para la expedición de la orden de allanamiento, aún si excluimos el testimonio en torno a lo observado por los agentes en el interior del edificio.

Mediante declaración jurada, expresó el agente Berríos que el día 17 de mayo de 1995 se encontraba vigilando el edificio en donde residía el imputado. Mientras lo hacía, entre otras cosas, observó que el imputado salió del edificio con una bolsa de color blanco. Narró, además, que:

> pud[o] observar que [el imputado] abordó su vehículo [por lo que] [...]proced[ió] a darle seguimiento hasta que llegó al Residencial Luis Lloréns Torres. Que al llegar frente al Edificio # 33, estacionó su vehículo y se desmontó del mismo y [el agente Berríos pudo] observar que éste [Ortiz Rodríguez] cargaba la misma bolsa que había visto anteriormente. Que al llegar frente a un grupo de personas que estaban frente al Edificio # 33, los cuales aparentaban ser adictos a drogas, sacó de la bolsa color blanco, una bolsa plástica transparente bastante grande, la cual contenía en su interior lo que aparentaba ser envolturas pequeñas color azul claro parecidas a las utilizadas para empacar la

sustancia controlada c/p Heroína. Este le entregó la bolsa a una de las personas que estaban en el grupo y contin[uó el agente] la marcha para no ser detectado. Que al pasar nuevamente, [el agente pudo] [...] observar que c/p Toño Gorila [Ortiz Rodríguez] tenía en sus manos lo que aparentaba ser dinero y éste caminó hacia el interior del Edificio # 33, hasta perderlo de vista. Apéndice de la Petición de Certiorari, a la pág. 60.

Asimismo, consta en la orden de allanamiento que ante el Magistrado de instancia desfiló prueba en términos de que el 24 de mayo de 1995 el agente Berríos observó que Ortiz Rodríguez salió en horas de la tarde del edificio en donde residía, y:

> [...] abord[ó] su vehículo y comenzó a retirarse del lugar. Que inmediatamente, le inform[ó] lo sucedido al Agente Padró y éste optó por quedarse en el lugar y [el agente Berríos] comenzó a darle seguimiento al vehículo Mitsubishi, rojo. Este se dirigió nuevamente como si fuera al Residencial Luis Lloréns Torres, perdiéndolo de vista. Que al llegar al residencial, el agente se dirigió al Edificio #33 y pud[o] observar que el vehículo Mitsubishi, rojo estaba estacionado frente al mismo y que c/p Toño se encontraba reunido con otras personas y éste sostenía la misma bolsa que el agente había visto anteriormente, la cual contenía algo en su interior parecido a envolturas color anaranjado, las cuales son utilizadas para endecar la sustancia controlada c/p Heroína. Que [el agente] continu[ó] la marcha para no ser detectado, retirándose del lugar. Id.

Como puede apreciarse, estas observaciones configuran un cuadro de hechos que parece revelar un patrón de transacciones ilegales que ubica al apartamento de Ortiz Rodríguez como lugar de almacenamiento de sustancias controladas. En este sentido, los agentes, desde el exterior del edificio, observaron que, en varias ocasiones, Ortiz Rodríguez salió del interior del mismo en donde tenía su apartamento con bultos o bolsas, y se dirigía a otros lugares a realizar transacciones con sustancias controladas.

En el caso de autos, no se trata de una situación en la que se expide una orden de registro de un apartamento cuando el agente del Estado que declara ante el magistrado que expide la orden sólo tiene motivos fundados para arrestar a una persona que de forma casual entra a un apartamento como ocurrió y rechazamos en Pueblo v. Santiago Alicea, Opinión y Sentencia de 2 de diciembre de 1998; ___D.P.R.___ (1998). Contrario a éste, en el presente caso hay observaciones

precisas, independientes a las observadas en el interior del edificio, que razonablemente sugieren que Ortiz Rodríguez, el propietario del apartamento en el cual fue diligenciada la orden de registro, utilizaba su apartamento para almacenar sustancias controladas.

Estimamos que esa prueba configura base suficiente para expedir la orden de registro del apartamento de Ortiz Rodríguez por lo que en apelación no debemos alterar la determinación del foro de instancia. Véase, 1 Ernesto L. Chiesa, supra, a la pág. 370. Por ello, estimamos que no erró el foro de instancia al expedir la orden impugnada ante nos, ni el foro apelativo al denegar la expedición del recurso de certiorari solicitado por Ortiz Rodríguez.


Federico Hernández Denton
Juez Asociado